Sullivan
No. 96-640

### DENNIS MAHONEY

v.

### SHAHEEN, CAPPIELLO, STEIN & GORDON, P.A. & a.

April 16, 1999

*Decato Law Offices*, of West Lebanon (*Karen Creighton Borgstrom* and *R. Peter Decato* on the brief, and *Ms. Borgstrom* orally), for the plaintiff.

*Roussos & Hage, of Manchester (Sara B. Shirley* on the brief), and *Orr and Reno P.A.*, of Concord (*Bradford W. Kuster* orally), for the defendants.

BRODERICK, J. The plaintiff, Dennis Mahoney, appeals an order by the Superior Court (*Morrill*, J.) dismissing his claim of malpractice against the defendants, Shaheen, Cappiello, Stein & Gordon, P.A., and Barbara Keshen, an attorney formerly with the firm. We affirm.

This case is a legal malpractice action brought by a convicted felon against the attorneys who represented him in grand jury proceedings prior to his indictment. In January 1994, Mahoney pled guilty to twelve felony indictments for theft by deception, falsification of evidence, and Medicaid fraud. The charges arose out of his theft of Medicaid and private insurance funds totaling over $373,000 while employed as a pharmacist by Health Center Pharmacy, Inc. (HCP), a corporation in which he held a majority interest. He was sentenced to serve seven to fourteen years at the State Prison and was required to pay restitution. He also was required to pay contempt fines totaling $60,000 that the Trial Court (*Manias*, J.) imposed on him and HCP prior to his indictment. After being sentenced, Mahoney obtained permission from the court to retain one-half of any recovery he secured in the legal malpractice action he intended to file against the defendants.

Before detailing the underlying facts of this case, we note its procedural posture. The defendants filed a motion to dismiss, or, alternatively, for summary judgment with accompanying affidavits, testimonial excerpts, and other supporting documents. The trial court apparently dismissed Mahoney's writ as a matter of law. On appeal, Mahoney faults the trial court for failing to recognize

numerous factual disputes, which he argues should have been resolved by a jury. Even if we assume factual disputes exist, Mahoney cannot maintain a malpractice claim in this case as a matter of law.

## I

Viewed in the light most favorable to Mahoney, the record reflects that in 1991, the Office of the Attorney General (the State) began investigating Mahoney and HCP for Medicaid fraud. In July 1991, the grand jury served a subpoena *duces tecum* on Mahoney as custodian of HCP's records, seeking prescription records regarding Medicaid patients and certain other business records of HCP. After receiving the subpoena, Mahoney destroyed certain prescription documents and other HCP records and purged prescription information from HCP's computer, all of which were requested by the subpoena and potentially incriminating.

In early August 1991, Mahoney agreed to produce some records and to allow access to others, but refused to produce everything requested. The State moved to compel production of the withheld documents, and HCP attempted to quash the subpoena on claims of physician-patient and Fifth Amendment privileges. On August 22, 1991, the Trial Court (*Manias*, J.) denied HCP's motion to quash based, in part, on the legal inability of a corporation, including a corporate officer on the corporation's behalf, to claim a Fifth Amendment privilege, and ordered it to produce the subpoenaed documents.

In September 1991, the grand jury served another subpoena *duces tecum* on Mahoney in his custodial capacity seeking additional HCP records, including prescription information for non-Medicaid patients not covered by the first subpoena. That same day, the State filed a petition for civil contempt relating to the court's August 1991 order due to Mahoney's noncompliance.

In early September, Mahoney hired the defendants to represent HCP and him, individually, in the grand jury investigation. He alleges that he informed the defendants that he destroyed much of the requested information, although they deny it. The defendants proceeded to execute a strategy to forestall the State from obtaining most of the subpoenaed documents. As part of this strategy, they sought to enjoin the grand jury from issuing a subpoena for non-Medicaid patients, to enjoin proceedings, and to pursue an interlocutory appeal. Counsels' arguments focused on the voluminous nature of the requested records and concerns that compliance

would be unreasonably time-consuming, burdensome, and expensive.

In October 1991, the court ordered both HCP and Mahoney to comply with the subpoenas. In January 1992, the State petitioned a second time for civil contempt, and the defendants unsuccessfully filed suit in federal court challenging the propriety of the grand jury subpoenas, an issue previously decided in State court. On March 2, 1992, the Trial Court (*Manias*, J.) found both Mahoney and HCP in civil contempt, ordered them "to produce the documents [sought by both subpoenas], or proof of their nonexistence, at the next meeting of the grand jury," and warned that failure to comply would result in civil fines of $1,000 for each day of noncompliance. The defendants filed neither a motion to reconsider nor an appeal.

On the defendants' advice, Mahoney appeared in his custodial capacity at the March 25, 1992, meeting of the grand jury and invoked his Fifth Amendment privilege in response to questions regarding HCP's records. In May 1992, the defendants moved to stay the fines, and in July 1992, unsuccessfully moved to reconsider the original contempt order. In January 1993, the court held a hearing to calculate fines. The defendants objected to the fines based, in part, on grounds that the court ruled untimely. The Trial Court (*Manias*, J.) imposed identical $30,000 contempt fines against Mahoney and HCP. Mahoney contends that because HCP had been sold on the defendants' advice and all of its assets depleted, he was liable to discharge HCP's contempt fines as well as his own. Subsequently, the defendants appealed the fines on Mahoney's behalf without his knowledge, consent, or involvement. We declined the appeal, and Mahoney ultimately pled guilty to multiple felony charges of Medicaid fraud, theft by deception, and falsifying physical evidence.

In May 1995, Mahoney sued the defendants for malpractice associated with their advice and activities regarding the Medicaid fraud investigation. Specifically, he sought damages for the civil contempt fines and attorney's fees paid to the defendants that he claimed were incurred as a result of the defendants' flawed legal representation, including their (1) decision and method of resisting the subpoenas, (2) representation of parties with adverse interests, *i.e.*, HCP and Mahoney, (3) failure to negotiate immunity for Mahoney's testimony before the grand jury, and (4) failure to properly seek post-decision relief from the trial court's contempt findings. Mahoney did not allege that the defendants advised him to destroy the HCP records or that he was innocent of Medicaid fraud, theft by deception, or falsifying physical evidence. The defendants

moved to dismiss, or in the alternative, for summary judgment, alleging that Mahoney's illegal conduct was the cause of his damages. The Trial Court (*Morrill*, J.) dismissed the complaint, reasoning that a malpractice claim in this context required Mahoney to establish his actual innocence of the underlying crime. The court concluded that because Mahoney admitted he destroyed the HCP records and thus could not establish his innocence, his claim failed as a matter of law. Mahoney appealed.

## II

Mahoney argues that the trial court erred in dismissing his malpractice claim because it improperly subjected his writ to a *criminal*, rather than a *civil*, malpractice standard. Alternatively, he claims that even if his writ asserted *criminal* malpractice, the court erred in dismissing it because he could not establish his actual innocence. The issues raised by Mahoney are matters of first impression.

■ Mahoney characterizes his malpractice claim as civil, arguing that pre-indictment investigation by a grand jury is a civil process because it (1) is not controlled by the legislature or any other "branch of institutional government," and (2) "may result in an indictment, *or it may not*." We disagree. The purpose of a grand jury investigation is to identify criminal wrongdoing, *see Powell v. Pappagianis*, 108 N.H. 523, 524-25, 238 A.2d 733, 734 (1968); 1 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 511, at 486, § 512, at 487-88 (1997), not civil or tortious acts. The inability of a particular branch of government to control the grand jury or the grand jury's declination to indict after its investigation does not change the criminal nature of the grand jury's investigatory function. *Cf. Powell*, 108 N.H. at 524, 238 A.2d at 734; 1 R. MCNAMARA, *supra* § 513, at 489 (1997). Accordingly, the defendants' alleged malpractice in their representation of Mahoney and HCP during the grand jury investigation is criminal and not civil in nature. Having concluded that Mahoney's claim is for criminal malpractice, we next examine the elements of proof required to establish it.

## III

■ In this State, a civil malpractice action requires proof of (1) an attorney-client relationship, which triggers a duty on the attorney to exercise reasonable professional care, skill, and knowledge in providing legal services to that client, (2) a breach of that

duty, and (3) resultant harm legally caused by the breach. *Witte v. Desmarais*, 136 N.H. 178, 182, 614 A.2d 116, 117 (1992); *see McLaughlin v. Sullivan*, 123 N.H. 335, 340, 461 A.2d 123, 126 (1983). Public policy, however, dictates an augmented standard in criminal malpractice actions. While such an action requires all the proof essential to a civil malpractice claim, a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence. It is not sufficient for a claimant to allege and prove that if counsel had acted differently, *legal* guilt would not have been established. As a matter of law, the gateway to damages will remain closed unless a claimant can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge. *See Glenn v. Aiken*, 569 N.E.2d 783, 788 (Mass. 1991).

Many jurisdictions have considered the propriety of a convicted defendant asserting a malpractice action against former counsel. The majority have imposed a stricter standard for criminal malpractice actions in apparent recognition of three basic public policy principles: (1) the criminal justice system affords individuals charged with crimes a panoply of protections against abuses of the system and wrongful conviction, including safeguards against incompetent and ineffective counsel, *see, e.g., Bailey v. Tucker*, 621 A.2d 108, 114 (Pa. 1993); (2) it is wrong to allow a guilty defendant to profit from criminal behavior, *see, e.g., Glenn*, 569 N.E.2d at 788; and (3) the pool of legal representation available to criminal defendants, especially indigents, needs to be preserved, *see, e.g., id.* The standards adopted in these jurisdictions vary. For example, some require the former defendant to achieve exoneration through direct appeal or post-conviction relief, *see Shaw v. State, Dept. of Admin., PDA*, 816 P.2d 1358, 1360 (Alaska 1991), *appeal after remand*, 861 P.2d 566 (Alaska 1993); *Morgano v. Smith*, 879 P.2d 735, 737 (Nev. 1994); *Stevens v. Bispham*, 851 P.2d 556, 566 (Or. 1993); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497-98 (Tex. 1995), some demand proof of actual innocence, *see Orr v. Black & Furci, P.A.*, 876 F. Supp. 1270, 1276 (M.D. Fla. 1995); *Bailey*, 621 A.2d at 113; *Glenn*, 569 N.E.2d at 786; *State Ex Rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 503 (Mo. Ct. App. 1985); *Carmel v. Lunney*, 511 N.E.2d 1126, 1128 (N.Y. 1987), and still others require a higher degree of culpability, *see Bailey*, 621 A.2d at 114-15 (former defendant must prove attorney's reckless or wanton disregard of his or her interest). In this case, the trial court dismissed Mahoney's malpractice claim according to the actual innocence approach, which we adopt for the three policy reasons deemed fundamental in other jurisdictions.

Our State's criminal justice system affords criminal defendants a host of protections, beginning with the right to constitutionally effective defense counsel, *see State v. Henderson*, 141 N.H. 615, 618, 689 A.2d 1336, 1339 (1997), whose quintessential role is to prevent an unjust conviction. In addition, a criminal defendant is protected by, *inter alia*, the law governing search and seizure, *see State v. Pinkham*, 141 N.H. 188, 189, 679 A.2d 589, 590 (1996), the probable cause requirement for arrest, *see State v. Christy*, 138 N.H. 352, 356, 639 A.2d 261, 264 (1994), the beyond a reasonable doubt standard for conviction, *see State v. Wentworth*, 118 N.H. 832, 838, 395 A.2d 858, 862 (1978), and post-conviction relief not afforded civil litigants, *cf. State v. Daigle*, 114 N.H. 679, 681, 327 A.2d 711, 713 (1974). The defense attorney, however, is the ultimate guardian of these constitutional rights, *cf. In re Lisa G.*, 127 N.H. 585, 590, 504 A.2d 1, 4 (1986), who must defend the client against the immense resources of the State in its pursuit of a conviction. The process of criminal investigation and prosecution is designed to discover truth within constitutional parameters, protecting against the ultimate evil of convicting innocent persons and stripping them of their liberty. *See Shaw v. State, Dept. of Admin.*, 861 P.2d 566, 570-71 (Alaska 1993). With this policy in mind, we must scrupulously protect the critical function of defense counsel to advocate for the client and to safeguard the accused's rights to a fair process, ensuring that any conviction reflects the truth. Any impediment to defense counsel's efforts to zealously protect the defendant is disfavored.

We believe that allowing a convicted defendant to maintain a legal malpractice action against former counsel without proof of actual innocence would likely shift the responsibility for the criminal conduct and its associated consequences away from the defendant, *see id.* at 571; *Peeler*, 909 S.W.2d at 498, and indirectly reward the wrongdoer for criminal activity, *see Glenn*, 569 N.E.2d at 788. Such a result "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *State Ex Rel. O'Blennis*, 691 S.W.2d at 504 (quotation omitted). We agree with the policy rationale expressed by the Supreme Court of Pennsylvania:

> [T]he purpose of criminal . . . trials is to discover *the truth*, and if the truth is that the defendant committed unlawful acts which constitute the crime or crimes charged, he will not be able to collect damages for the discovery of the truth. Allowing this possibility of a guilty plaintiff collecting damages would violate the public policy of this state.

*Bailey*, 621 A.2d at 113. Imposing an actual innocence standard for legal malpractice actions brought by convicted defendants prevents the perversion of our public policy. *Cf. id.*

Further, requiring this standard promotes an ample defense bar by reducing the risk of malpractice claims. *See Glenn*, 569 N.E.2d at 788; *Bailey*, 621 A.2d at 114. Many of those representing the accused do so on a pro bono or reduced fee basis. We agree with the Supreme Judicial Court of Massachusetts that "[t]he public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent." *Glenn*, 569 N.E.2d at 788. Setting the standard at a lower level may well dampen counsels' willingness to enter the criminal defense arena. Accordingly, after weighing numerous policy considerations, we hold that tactical or strategic decisions made by defense counsel during their representation should not be subject to attack by clients unable to prove their actual innocence.

## IV

We acknowledge that the jurisdictions which have adopted a stricter standard in criminal malpractice actions have confronted scenarios in which a convicted defendant was seeking damages for *the conviction. See, e.g., Glenn*, 569 N.E.2d at 785; *Peeler*, 909 S.W.2d at 495. Mahoney, however, seeks compensation only for his civil contempt fines and attorney's fees paid to the defendants. This distinction is of no consequence in the circumstances before us. The vital role of defense counsel to advocate for the client's acquittal while ensuring no deprivation of constitutional rights does not begin on the first day of trial. Rather, this responsibility commences at least as early as the investigative stage, assuming the attorney-client relationship has been established. Defending an accused is a seamless process; each decision is ultimately aimed at securing acquittal and safeguarding the client from an unjust conviction. Therefore, proof of actual innocence is equally critical in criminal malpractice claims seeking damages allegedly caused by negligent tactical or strategic decisions, rather than for the conviction itself.

Mahoney's malpractice action is based on the defendants' allegedly flawed legal representation during the grand jury investigation, particularly their efforts to resist disclosure of HCP's records. The defendants' conduct that Mahoney challenges, however, consisted of professional judgments intended to avert indictment and ultimate conviction. This conduct cannot be logically separated from the integrated process of representing a defendant in a criminal proceeding.

Mahoney's criminal malpractice action seeks damages allegedly caused by tactical or strategic decisions, the nature of which we hold requires proof of actual innocence. Because Mahoney does not allege his actual innocence and, in fact, admitted to destroying the records as well as the underlying crimes of Medicaid fraud and theft by deception, the trial court correctly concluded that he cannot as a matter of law establish all necessary elements of a legal malpractice action in this case. Accordingly, the trial court properly dismissed the suit.

Our opinion should in no way be interpreted as endorsing a defense attorney's conduct in failing to comply with court orders or subpoenas, employing improper delay tactics, or independently making decisions affecting a client without fully disclosing the risks involved. We reviewed the context of the defendants' actions merely to demonstrate their tactical or strategic nature for purposes of determining the applicable malpractice elements in this case.

*Affirmed.*

All concurred.