Merrimack
No. 2007-390

JOSE HILARIO

v.

NEIL J. REARDON

Argued: October 15, 2008
Opinion Issued: November 7, 2008

Jose Hilario, by brief, *pro se.*

*Flygare, Schwarz & Closson, PLLC,* of Exeter (*Daniel P. Schwarz* on the brief and orally), for the plaintiff.

*Nelson, Kinder, Mosseau & Saturley, PC,* of Manchester (*William C. Saturley* and *Christopher D. Hawkins* on the brief, and *Mr. Hawkins* orally), for the defendant.

GALWAY, J. The plaintiff, Jose Hilario, appeals an order of the Superior Court (*Lynn,* C.J.) dismissing his legal malpractice action against the defendant, Attorney Neil J. Reardon. We reverse and remand.

The following facts appear in the record. In 2004, the plaintiff was indicted in both Rockingham and Hillsborough Counties on various charges. He pled guilty to all charges, and sentences on two charges were suspended. On the remaining charges, the plaintiff entered into a plea agreement with the State which provided that if he met certain conditions, including cooperating in other prosecutions, the State would petition for the suspension of a portion of his sentence. In September 2004, the plaintiff

began serving a seven and a half year minimum sentence. Later that month, the defendant, who was representing the plaintiff, filed a motion to withdraw the plaintiff's plea regarding the Hillsborough County charges, in which it was stated that the plaintiff "is innocent of the Hillsborough charges and would now like to withdraw his plea of guilty to these charges and request a trial." The plaintiff avers that he did not authorize, and was not even aware of, the motion to withdraw. The Trial Court (*Nadeau*, J.) denied the motion.

In late March 2006, the plaintiff, acting *pro se*, filed a motion to suspend a portion of his sentence pursuant to the plea agreement. The State objected, arguing that by attempting to withdraw his plea, the plaintiff had breached the terms of the agreement. The plaintiff also filed a motion to obtain the transcripts of his sentencing hearing, which the State opposed. Ultimately, the Trial Court (*Nadeau*, J. & *Coffey*, J.) denied the plaintiff's motions; the motion to suspend was denied because the trial court agreed with the State that by attempting to withdraw his plea, the plaintiff had not complied with the terms of the plea agreement. The plaintiff did not appeal those rulings.

Subsequently, the plaintiff, again acting *pro se*, filed a civil complaint against the defendant alleging legal malpractice and negligence in filing the motion to withdraw his guilty plea, which led to the denial of his motion to suspend. In April 2007, the defendant, relying upon *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491 (1999), moved to dismiss the complaint. In May 2007, the trial court granted the motion to dismiss in an order stating only: "MOTION GRANTED, NO OBJECTION HAVING BEEN FILED." That same day the plaintiff objected to the motion to dismiss, arguing that *Mahoney* did not apply to his claims. He did not move to reconsider the trial court's order granting the motion to dismiss. The plaintiff now appeals, arguing that the trial court erred in granting the motion to dismiss and in not permitting him to obtain certain discovery.

We first address the defendant's contention that the plaintiff has not preserved any issues for our review. According to the defendant, because the plaintiff neither filed a timely objection, nor moved to reconsider the trial court's decision, none of the plaintiff's claims is properly before us.

As to the plaintiff's claim that the trial court erred in not permitting him certain discovery, we agree that the matter is not preserved. The plaintiff has not briefed the matter on appeal, and we, thus, consider the issue waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998), *cert. denied*, 535 U.S. 969 (2002). However, as to the plaintiff's argument that the trial court erred in granting the motion to dismiss because *Mahoney* does not bar his claim, a matter he has briefed on appeal, we conclude that the matter is properly before us. Here, the trial court's order on the defendant's motion

to dismiss stated that the motion was granted because no objection was filed. Thus, the apparent basis of the trial court's ruling was not the merits of the parties' claims, but simply that the plaintiff had not timely objected. The plaintiff did not move to reconsider the trial court's ruling nor did he raise it in his notice of appeal. On appeal, however, he contends that the trial court's ruling violated Superior Court Rule 58 and relevant case law. We conclude that the trial court's ruling constitutes plain error. *See* Sup. Ct. R. 16-A.

█ The plain error rule allows us to exercise our discretion to correct errors not raised in the trial court or in the notice of appeal. *See id.*; *State v. Emery*, 152 N.H. 783, 786 (2005). The rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Emery*, 152 N.H. at 786. For the rule to apply: (1) there must be error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *State v. Panarello*, 157 N.H. 204, 207 (2008).

██ Regarding the first two criteria, Superior Court Rule 58 states, in relevant part:

> In civil or equity actions, unless a party requests oral argument or an evidentiary hearing on any motion filed by the party or on any objection thereto by another party within ten (10) days after the filing of the motion . . . the court may act on the motion on the basis of the pleadings and record before it. Failure to object shall not, in and of itself, be grounds for granting the motion.

In ruling on a prior version of Rule 58, we stated that "[w]e construe the language of Rule 58 as requiring that a trial judge decide whether or not to grant the motion only after the judge has considered the law and the pleadings before the court." *McGann v. Steenstra*, 130 N.H. 411, 412 (1988). "Rule 58 does not provide that a motion to which no objection is filed within ten days may be ministerially granted." *Id.* Rule 58, in its current form, explicitly states that which we held in *McGann*: the lack of an objection is, in itself, an insufficient basis to grant a motion. Because the trial court granted the defendant's motion on the ground that an objection was not filed, and because such a ruling is barred both by *McGann* and Rule 58, we conclude that there was error and that the error was plain.

On the third criterion, to satisfy the burden of demonstrating that an error affected substantial rights, the plaintiff must demonstrate that the error was prejudicial, *i.e.*, that it affected the outcome of the proceeding.

*State v. Lopez*, 156 N.H. 416, 425 (2007). Here, the trial court's ruling dismissed the plaintiff's cause of action with no regard for the merits of the parties' claims. Therefore, the error clearly affected the outcome of the proceedings. Finally, because the trial court's ruling dismissed the plaintiff's action on a basis expressly prohibited by the superior court rules, to allow the ruling to remain would seriously affect the fairness and integrity of judicial proceedings.

For these reasons we conclude that the trial court's order dismissing the plaintiff's case for failure to file an objection was plain error and therefore cannot stand. However, rather than remand the matter for a new ruling, because the issue presented is a question of law, we choose, in the interest of judicial economy, to address the merits of the plaintiff's claim. *See State v. Vassar*, 154 N.H. 370, 375 (2006).

In reviewing the trial court's grant of a motion to dismiss, our task is to ascertain whether the allegations pled in the plaintiff's writ are reasonably susceptible of a construction that would permit recovery. *Berry v. Watchtower Bible & Tract Soc.*, 152 N.H. 407, 410 (2005). We assume all facts pled in the plaintiff's writ are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor. *Id.* We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law. *Id.*

The plaintiff argues that *Mahoney* should either be overruled, or that it does not bar claims such as his. In *Mahoney*, during an investigation into potential Medicaid fraud, the State, through a grand jury, served a subpoena *duces tecum* on Mahoney requesting the disclosure of various records and documents. *Mahoney*, 143 N.H. at 493. Although Mahoney disclosed some documents, he refused to comply fully with the subpoena. *Id.* After he failed to comply with additional subpoenas served on him, as well as an order of the trial court compelling production of the records, the State petitioned for Mahoney to be held in civil contempt. *Id.* Mahoney then hired the defendant attorney and her law firm to represent him for purposes of the grand jury investigation. *Id.*

Upon beginning their representation of Mahoney, the defendants began executing a strategy of forestalling the State from obtaining the records sought. *Id.* After various hearings relating to the subpoenas and Mahoney's lack of compliance, Mahoney was held in civil contempt and fined. *Id.* at 494. Eventually, he pled guilty to various charges relating to Medicaid fraud. *Id.* Following his plea, "Mahoney sued the defendants for malpractice associated with their advice and activities regarding the Medicaid fraud investigation." *Id.* He sought to recover the contempt fines and attorney's fees, in part, because of the defendants' allegedly flawed representation in resisting the subpoenas issued in conjunction with the fraud case. *Id.*

■ ■ In assessing whether Mahoney could maintain the action for malpractice against his former criminal defense attorney and her firm, we held:

> A civil malpractice action requires proof of (1) an attorney-client relationship, which triggers a duty on the attorney to exercise reasonable professional care, skill, and knowledge in providing legal services to that client, (2) a breach of that duty, and (3) resultant harm legally caused by the breach. Public policy, however, dictates an augmented standard in criminal malpractice actions. While such an action requires all the proof essential to a civil malpractice claim, a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence.

*Id.* at 495-96 (citations omitted). We further stated:

> It is not sufficient for a claimant to allege and prove that if counsel had acted differently, *legal* guilt would not have been established. As a matter of law, the gateway to damages will remain closed unless a claimant can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge.

*Id.* at 496.

■ Thus, since *Mahoney*, to prevail on a malpractice claim against a former criminal defense attorney, a criminal defendant must allege and prove his actual innocence. Here, the plaintiff does not allege actual innocence; indeed he expressly relies upon the existence of a valid plea agreement to establish his cause of action. Thus, the defendant contends that *Mahoney* bars the plaintiff's claim. The plaintiff, however, contends that *Mahoney* ought to be overruled as too restrictive, or that it should be limited to cases where the claimant is alleging malpractice leading to a wrongful conviction.

■ ■ At the outset, we do not agree that *Mahoney* must be overruled. "The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." *Alonzi v. Northeast Generation Servs. Co.*, 156 N.H. 656, 659-60 (2008) (quotation omitted). When asked to overrule a prior holding, we do not look at the issues *de novo*; rather, we review whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed. *Id.* at 660.

Several factors inform our judgment, including: (1) whether the rule has proven to be intolerable simply in defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Id.* (quotation omitted). The plaintiff makes no argument specifically directed at any of the factors listed above. Instead, the plaintiff contends that *Mahoney* was wrongly decided because other jurisdictions have adopted different rules, and because the public policies upon which the actual innocence standard is based are inapplicable here and lead to inequitable treatment.

■ As to the first contention, the existence of different rules in different jurisdictions does not compel any particular conclusion here. Further, prior to *Mahoney*, numerous jurisdictions had adopted rules identical, or substantially similar, to the "actual innocence" standard. *See Mahoney*, 143 N.H. at 496 (citing cases). We also note that other jurisdictions have adopted substantially similar standards since *Mahoney* was decided. *See, e.g., Ang v. Martin*, 114 P.3d 637, 642 (Wash. 2005); *Canaan v. Bartee*, 72 P.3d 911, 920-21 (Kan.), *cert. denied*, 540 U.S. 1090 (2003). Accordingly, the fact that some other jurisdictions have adopted other standards does not persuade us to overrule *Mahoney*.

As to the plaintiff's second contention, while strict application of the rule may appear unfair, we do not conclude that such unfairness is justification to overrule *Mahoney*. We do, however, agree with the plaintiff that the potential unfairness resulting from the rule does require us to revisit *Mahoney* and to clarify its holding to avoid unfairly barring certain criminal malpractice claims.

Our adoption of the actual innocence standard in *Mahoney* was based upon three public policy principles, namely:

(1) the criminal justice system affords individuals charged with crimes a panoply of protections against abuses of the system and wrongful conviction, including safeguards against incompetent and ineffective counsel; (2) it is wrong to allow a guilty defendant to profit from criminal behavior; and (3) the pool of legal representation available to criminal defendants, especially indigents, needs to be preserved.

*Mahoney*, 143 N.H. at 496 (citations omitted). Additionally, we noted that although those jurisdictions adopting something akin to the actual innocence standard did so in the context of defendants seeking damages relating to their convictions, whereas Mahoney was seeking only a remedy for his civil contempt fines, the distinction was of no consequence. *Id.* at 498. This was so because in *Mahoney*, as in the cases where a conviction was disputed, the challenged conduct "consisted of professional judgments intended to avert indictment and ultimate conviction. This conduct cannot be logically separated from the integrated process of representing a defendant in a criminal proceeding." *Id.* Thus, we concluded that "proof of actual innocence is equally critical in criminal malpractice claims seeking damages allegedly caused by negligent tactical or strategic decisions, rather than for the conviction itself." *Id.*

Although the actual innocence standard from *Mahoney* extends beyond occasions where the criminal defendant is attacking the conviction itself to encompass those where a malpractice action is used to question tactical decisions underlying the representation leading to the conviction, we are not persuaded that the standard applies to the plaintiff's claims here. In *Mahoney* and other cases applying similar standards, courts are generally concerned with malpractice actions that, even if they do not directly challenge the underlying conviction, tend to undermine or indirectly challenge it. *See id.* at 498; *Glenn v. Aiken*, 569 N.E.2d 783, 784 (Mass. 1991); *Shaw v. State, Dept. of Admin., PDA*, 816 P.2d 1358, 1360 (Alaska 1991); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497-98 (Tex. 1995). In *Mahoney*, for example, Mahoney was essentially arguing that the defendants had committed malpractice by pursuing certain pre-trial tactics designed, in the final analysis, to avoid his indictment and conviction. He was, therefore, challenging professional judgments integrally related to the criminal process and the establishment of his guilt. In other words, he was contending that had his attorney acted differently, he would have obtained a different outcome. In contrast, assuming the plaintiff's allegations to be true in this case, the malpractice alleged does not challenge the plaintiff's convictions and is not an argument that if his attorney had acted differently, a different result would obtain. He has not, and does not now, challenge any tactical or strategic decision bearing upon his convictions. Thus, we believe this case distinguishable from *Mahoney*.

Furthermore, a review of the public policies underlying our adoption of the actual innocence standard supports the conclusion that the plaintiff's claim is not barred by *Mahoney*. First, the "panoply of protections against abuses of the system and wrongful conviction," *Mahoney*, 143 N.H. at 496, does not protect the rights the plaintiff is attempting to vindicate here. As we identified in *Mahoney*, among the protections available to criminal

defendants are those secured by: the requirement of constitutionally effective defense counsel; the laws governing search and seizure; the requirement of probable cause for arrests; the beyond a reasonable doubt standard for convictions; and post-conviction relief not available to civil litigants. *Id.* at 497. While all of these are meant to safeguard a criminal defendant's rights under the constitution to a fair trial, none relate to the plaintiff's claim. Whether, for example, the plaintiff was arrested with probable cause, has no bearing upon whether his attorney's malpractice deprived him of the benefits of his plea agreement with the State for a decreased sentence. As noted in a recent decision from Colorado, "Postconviction remedies exist to protect the constitutional rights of criminal defendants, not to protect negligent defense attorneys." *Rantz v. Kaufman*, 109 P.3d 132, 138 (Colo. 2005); *see also McKnight v. Public Defender Office*, 936 A.2d 1036, 1047 (N.J. Super. Ct. App. Div. 2007), *certification granted by* 949 A.2d 848 (N.J. 2008). As such, we find this policy consideration unpersuasive in the context of this case.

Also, there is no threat that, should he ultimately prevail, the plaintiff would be enriched by his criminal conduct. The plaintiff maintains that he pled guilty to the charges against him because he was guilty and that he remains so. He does not seek any form of profit or enrichment from the crimes with which he was charged and to which he pled guilty. He is not, therefore, shifting "the responsibility for the criminal conduct and its associated consequences" away from himself, and would not be indirectly rewarded for his criminal activity. *Mahoney*, 143 N.H. at 497. The plaintiff seeks to be compensated for the breach of his agreement with the State occasioned by the alleged malpractice of his attorney, which occurred well after he accepted responsibility for his acts. Thus, we are not persuaded that the public policy of preventing criminals from profiting from their crimes ought to be invoked to prevent claims such as the plaintiff's.

Finally, in *Mahoney* we concluded that limiting claims against criminal defense attorneys was necessary to preserve the pool of legal representation available to defendants, particularly indigent ones. *Mahoney*, 143 N.H. at 498. We stated that requiring defendants to show actual innocence "promotes an ample defense bar by reducing the risk of malpractice claims," and that "[s]etting the standard at a lower level may well dampen counsels' willingness to enter the criminal defense arena." *Id.*

Certainly maintaining a robust number of defense attorneys is a laudable goal. We are not, however, convinced that distinguishing *Mahoney* from cases such as this would be injurious to that effort. As noted, criminal defense attorneys ought not be made to defend against claims arising out of their tactical or strategic decisions during "the integrated process of

representing a defendant in a criminal proceeding." *Id.* That rule we uphold. Yet, assuming the plaintiff's allegations to be true, we are at a loss to see what strategic or tactical decision was at work in the process of a criminal proceeding here that inspired the filing of a motion the plaintiff claims he did not authorize, and of which he claims to have been unaware, after he had pled guilty, cooperated with the State, and begun serving his agreed-upon prison term. Distinguishing this type of claim from those governed by *Mahoney* does no violence to the desire to maintain an ample defense bar because we do not diminish the protections available to attorneys in the execution of their pre-trial and trial strategies. A plaintiff must still demonstrate his actual innocence when the claim is based upon an allegedly wrongful conviction or upon professional judgments intended to avert indictment or conviction. *Id.; see also Therrien v. Sullivan,* 153 N.H. 211, 216 (2006) ("[A]s long as a valid criminal conviction is in place, a legal malpractice cause of action based on a defense counsel's ineffective assistance resulting in that conviction cannot withstand a motion to dismiss."). Where, however, the questionable behavior is unrelated to the accused's culpability for the underlying acts and is, in all relevant respects, unrelated to those acts, we are not convinced that *Mahoney* bars those claims.

The defendant argues that other jurisdictions with similar standards have concluded that criminal malpractice claims outside the context of a challenge to the conviction, such as when a criminal defendant claims he received a longer sentence than that which he might otherwise have obtained, are likewise barred when there is no showing of actual innocence. *See, e.g., Howarth v. State, Public Defender Agency,* 925 P.2d 1330 (Alaska 1996). The claim at issue here, however, is not that the plaintiff received a longer sentence than he ought because of his attorney's deficient performance, which would clearly be related to the attorney's representation in the criminal process. Instead, it is that once he had agreed to a sentence and had entered into an agreement with the State for the attachment of certain conditions that would permit him to petition for suspension of part of that sentence, it was the negligence of his attorney that upset the agreement. Thus, we do not agree that the rule ought to extend as far as argued by the defendant. Nor do we agree that using the actual innocence standard to create *de facto* immunity from malpractice for criminal defense attorneys, no matter the nature of their malpractice, nor when it occurs, so long as the criminal defendant bears some degree of guilt, is sound public policy.

For the above reasons we conclude that in this case, where the alleged legal malpractice occurred after the plea and sentencing, where the

claim is unrelated to any strategic or tactical decision relating to the plaintiff's convictions, and where the plaintiff does not argue that but for his attorney's negligence he would have obtained a different result in the criminal case, the legal malpractice action is not barred by *Mahoney*. Accordingly, we reverse the trial court's grant of the defendant's motion to dismiss, and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.