STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                              DOCKET NO. CV-16-283

ALISON DICKEY,

            Plaintiff
                              
v.                                                      ORDER

DAVID SINCLAIR, ESQ., et al.,

            Defendants


Plaintiff Alison Dickey has brought a civil action for malpractice and violation of the Unfair Trade Practice Act (UTPA) against defendants David Sinclair, Esq., and the Law Office of David Sinclair LLC, P.A. (collectively, "Sinclair"). Dickey's claims arise from Sinclair's representation of Dickey in a criminal case in which the charge was ultimately dismissed after Dickey had obtained new counsel.

Before the court is a motion to dismiss by Sinclair.


Law Applicable to Motions to Dismiss

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The complaint must be read in the light most favorable to the plaintiff to determine if it sets forth elements of a cause of action or alleges facts that would entitle plaintiff to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010. Dismissal is appropriate only when it appears beyond doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of her claim. *Moody v. State Liquor & Lottery Commission,* 2004 ME 20 ¶ 7, 843 A.2d 43. However, a

plaintiff may not proceed if the complaint fails to allege essential elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell,* 1998 ME 70 ¶¶ 6-7, 708 A.2d 283.

After defendants filed the pending motion to dismiss, Dickey filed an amended complaint that added one paragraph (¶72) alleging that she was innocent of the criminal charge and that she had been exonerated by the dismissal of the charge. Defendants argue that even as amended, Dickey's complaint fails to state a claim on which relief may be granted. *See* Defendants' Reply Memorandum at 3. Accordingly, the court will consider the motion as addressed to the First Amended Complaint.

While the court cannot ordinarily consider matters outside the pleadings on a motion to dismiss, the court can consider official public documents, documents that are central to a plaintiff's claim, and documents referred to in the complaint without converting a motion to dismiss into a motion for summary judgment. *Moody v. State Liquor and Lottery Commission,* 2004 ME 20 ¶¶ 8-10. In this case, the court can consider the indictment, court documents relating to the appointment of counsel, the deferred disposition agreement, the dismissal, and the docket sheet in CR-12-7669 as those meet the criteria of being official public documents that are central to plaintiff's claims, and many are mentioned in the complaint. The court agrees with Dickey, however, that on a motion to dismiss, it cannot consider factual assertions set forth in the criminal discovery in CR-12-7669 or in an affidavit filed by Dickey in a subsequent civil case, CV-13-1310.

Dickey's Allegations

Briefly stated, the amended complaint alleges that Dickey was indicted for felony theft by unauthorized taking in 2012, that Sinclair represented her, and that Sinclair was professionally negligent in negotiating and persuading her to accept a deferred disposition agreement whereby she entered a plea of guilty to the felony theft charged in the indictment. Under the agreement, after two years the charge would be reduced and result in a misdemeanor conviction if Dickey paid $ 2,050.01 in restitution and complied with certain other terms of the deferred disposition. First Amended Complaint ¶¶ 58-59, 61, 63.

Dickey essentially alleges that she had valid defenses that were ignored by Sinclair, that Sinclair failed to perform an adequate investigation of the charges, and that, after she obtained new counsel, she was able to obtain a more favorable result consisting of a dismissal of all charges although she had to pay an additional amount for restitution. First Amended Complaint ¶¶ 55-57, 60, 64-66, 68-69. She is seeking damages for harm to reputation, mental distress, and attorneys fees and expenses incurred in obtaining the dismissal of the criminal charge and in defending civil litigation in Georgia that arose from the same events that led to the criminal charge.

On her claim for violation of the Unfair Trade Practice Act, Dickey alleges that Sinclair made numerous deceptive and misleading representations or omissions, including representations that he had the requisite skill and experience to represent Dickey although he had only been admitted to the bar for two years, along with a failure to disclose that he had personal and family matters that distracted him from his legal practice. First Amended Complaint ¶¶ 54, 81.

3

<u>Majority Rule Requiring Showing of Exoneration and/or Actual Innocence</u>

Sinclair argues that where a criminal defense attorney is sued for legal malpractice, the plaintiff is required not only to plead and prove the standard elements of a legal malpractice claim,[1] but must also plead and prove that she was exonerated in the case and that she was actually innocent of the crime charged. This is an issue that the Law Court noted – but did not decide – in *Brewer v. Hagemann*, 2001 ME 27 ¶¶ 6-7, 771 A.2d 1030.

In *Brewer* the Law Court noted that courts in a number of states had required criminal defendants alleging malpractice by their defense counsel to prove that they were actually innocent of the crime charged while courts in other states had required that the criminal conviction be overturned or the defendant otherwise exonerated. *Id.*, citing cases at nn. 3 and 4. Some states have required both showings. *E.g., Coscia v. McKenna & Cuneo*, 25 P.3d 670, 672-73 (Cal. 2001). There is also a minority of states that have not required either a showing of exoneration or a showing of actual innocence. *See Brewer*, 2001 ME 27 ¶ 6 at n. 5.

It does not appear that Dickey disagrees that she must plead and prove that she was exonerated and that she is actually innocent of the charge in question. Her memorandum in opposition to Sinclair's motion to dismiss simply states that, "assuming for the sake of argument that the Law Court would adopt the majority rule," Plaintiff's Memorandum at 4, her amended complaint adequately alleges both exoneration and actual innocence. Sinclair disagrees.

---

[1] The normal elements are (1) that the defendant attorney breached a duty to exercise or appropriate standard of skill and care, and (2) that the breach proximately caused injury to plaintiff. *E.g., Brewer v. Hagemann*, 2001 ME 27 ¶ 5, 771 A.2d 1030.

4

Exoneration

To the extent that Dickey has preserved the argument that a showing of exoneration is not required, the court concludes that if faced with the issue, the Law Court would require at a minimum that a malpractice plaintiff show that she has been exonerated as one of the elements of a legal malpractice claim against a criminal defense attorney appointed to represent her.

Cases adopting an exoneration rule include *Rogers v. Cape May County Office of Public Defender,* 31 A.3d 934, 939-940 (N.J. 2011); *Canaan v. Bartee,* 72 P.3d 911, 915-17 (Kan. 2003) (collecting cases); *Noske v. Friedberg,* 656 N.W.2d 409, 413-14 (Minn. App. 2000); *Coscia v. McKenna & Cuneo,* 25 P.3d at 672-73 (Cal. 2001); *Gibson v. Trant,* 58 S.W.3d 107, 116 (Tenn. 2001); *Britt v. Legal Aid Society,* 741 N.E. 2d 109, 111-12 (N.Y. 2000), *Berringer v. Steele,* 758 A.2d 574, 597 (Md. App. 2000) (requiring criminal defendants to obtain post-conviction relief as a predicate to recovery against counsel); *Steele v. Kehoe,* 747 So.2d 931, 933 (Fla. 1999); *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 497-98 (Tex. 1995); and *Stevens v. Bispham,* 851 P.2d 556, 566 (Or. 1993).

As long as a criminal defendant who seeks to assert a malpractice claim is still subject to the criminal conviction about which she complains, she would be collaterally estopped from demonstrating that but for the alleged malpractice, she would have obtained a better result. A requirement of exoneration also follows from the principle that it is inconsistent to simultaneously treat an existing criminal conviction as both legal and wrongful. *See Britt v. Legal Aid Society,* 741 N.E.2d 109, 112 (N.Y. 2000); *Noske v. Friedberg,* 656 N.W.2d at 414. Moreover, as long as criminal charges are still pending, the same

defendant would, if convicted, be subject to a potential defense of collateral estoppel that would preclude her claim.

In this case, however, the criminal charge has been dismissed, and Dickey is not facing further criminal proceedings. Dickey argues that this meets the exoneration requirement even though she acknowledges that criminal charge was at least ostensibly dismissed "without prejudice." See Plaintiff's Memorandum in Opposition to Dismissal at 4. Sinclair argues that only a dismissal "with prejudice" will suffice to meet the exoneration requirement, citing the New Jersey Supreme Court's decision in *Rogers v. Cape May County Office of Public Defender*, 31 A.3d at 936, 940-41.

In *Rogers* the New Jersey Supreme Court found that the plaintiff had not been exonerated until the charges against him had been dismissed with prejudice. Until that time, however, the plaintiff had been facing a potential retrial after his petition for post-conviction review had been granted, and the charges against him therefore remained pending until the dismissal. 31 A.3d at 940.

In this case, in contrast, the charge has been dismissed, and no criminal charge is pending. Moreover, even if the dismissal was stated to be without prejudice, the State would be held to the plea agreement and would not be able to reinstitute the charges given that Dickey has met her obligations under the deferred disposition agreement as amended. *See State v. Russo*, 2008 ME 31 ¶¶ 14-19, 942 A.2d 694.

Accordingly, Dickey has adequately demonstrated that she meets the requirement of exoneration, and her amended complaint will not be dismissed on that ground.

6

## Actual Innocence

The court further concludes that a criminal defendant asserting a claim of legal malpractice by her defense attorney must also make a showing of actual innocence.[2] The court's research indicates that courts in at least 13 states - California, Illinois, Kentucky, Massachusetts, Nebraska, Nevada, New Hampshire, Pennsylvania, South Carolina, Virginia, Washington, West Virginia, and Wisconsin - have so ruled.[3] The Supreme Court of Alaska has agreed that actual innocence is relevant to a claim of malpractice on the part of a criminal defense lawyer but concluded that the issue of whether the malpractice plaintiff actually committed the crime is an affirmative defense to be raised by the malpractice defendant.[4] The New York Court of Appeals requires that a person suing a criminal defense lawyer for malpractice must allege "innocence or a colorable claim of innocence."[5]

---

[2] Once again, it does not appear that Dickey disputes the requirement that she plead and prove actual innocence.

[3] *Coscia v. McKenna & Cuneo*, 25 P.3d at 672-73 (Cal. 2001); *Wiley v. County of San Diego*, 966 P.2d 983, 985-91 (Cal. 1998); *Paulsen v. Cochran*, 826 N.E.2d 526, 530-33 (Ill. App.), *leave to appeal denied*, 833 N.E. 2d 4 (Ill. 2005); *Ray v. Stone*, 952 S.W.2d 220, 224 (Ky. App. 1997); *Correia v. Fagan*, 891 N.E. 2d 227, 233-34 (Mass. 2008); *Glenn v. Aiken*, 569 N.E. 2d 783 (Mass. 1991); *Rodriguez v. Nielsen*, 609 N.W.2d 368, 373-75 (Neb. 2000); *Morgano v. Smith*, 879 P.2d 735, 738 (Nev. 1994); *Mahoney v. Shaheen, Cappiello, Stein & Gordon P.A.*, 727 A.2d 996, 999-1000 (N.H. 1999); *Bailey v. Tucker*, 621 A.2d 108, 115 n. 12 (Pa. 1993); *Brown v. Theos*, 550 S.E.2d 304, 306 (S.C. 2001); *Taylor v. Davis*, 576 S.E.2d 445, 447 (Va. 2003); *Adkins v. Dixon*, 482 S.E.2d 797, 801-02 (Va. 1997); *Piris v. Kitching*, 375 P.3d 627, 630-31 (Wash. 2016); *Ang v. Martin*, 114 P.3d 637, 641-42 (Wash. 2005); *Humphries v. Detch*, 712 S.E.2d 795, 801 (W.Va. 2011); *Hicks v. Nunnery*, 2002 WI App. 87 ¶¶ 32-45, 643 N.W.2d 809 (Wisc. App. 2002), *petition for review denied*, 2003 WI 16, 657 N.W.2d 706 (Wisc. 2003).

[4] *Shaw v. State of Alaska*, 861 P.2d 566, 570-72 (Alaska 1993).

[5] *Britt v. Legal Aid Society*, 741 N.E. 2d 109, 111 (N.Y. 2000), quoting *Carmel v. Lunney*, 511 N.E.2d 1126, 1128 (N.Y. 1987). It is not entirely clear what the New York decisions mean by a "colorable" claim of innocence. However, it appears that they require something more than exoneration because they note that exoneration is required before a criminal defendant suing his counsel can even assert his innocence. *Britt*, 741 N.E.2d at 111-12.

7

The court is aware that other courts have held that while a showing of exoneration is necessary, a showing of actual innocence is not. *E.g., Berringer v Steele*, 758 A.2d at 597 (Md. App. 2000). Some courts have required exoneration but have reserved the question of whether a showing of actual innocence is required or have otherwise declined to rule on whether actual innocence must be shown. *E.g., Canaan v. Bartee*, 72 P.3d at 921 (Kan. 2003); *Bloomer v. Gibson*, 2006 VT 104 ¶ 29, 912 A.2d 424.

The courts that have concluded that a showing of actual innocence is required have relied on a number of considerations. Many of those are set forth in the California Supreme Court's opinion in *Wiley v. County of San Diego*, 966 P.2d at 985-91, which notes that the actual innocence requirement has been followed by a "clear majority" the courts that have confronted the issue. 966 P.2d at 985. *Accord, Correia v. Fagan*, 891 N.E. 2d at 234. Others are listed in the Washington Supreme Court's decisions in *Piris v. Kitching*, 375 P.3d at 630-31, and *Ang v. Martin*, 114 P.3d at 641-42.

Some of the considerations cited in *Wiley* and in the other cases adopting an actual innocence requirement are more persuasive than others. Of the various rationales that have been offered to support the "actual innocence" rule, the court finds two to be compelling. The first is that the procedural safeguards in the criminal justice system and the requirement that a conviction must be based on proof beyond a reasonable doubt serve to protect defendants who have in fact committed the crimes charged as well as defendants who are innocent. As a result, there is a difference between legal innocence and actual innocence. *See Correia v. Fagan*, 891 N.E. 2d at 233-34; *Ang v. Martin*, 114 P.3d at 642.

Given that distinction, "[t]he notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an

8

acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement." *Wiley v. County of San Diego*, 966 P.2d at 987 (citation omitted). As noted by the Washington Supreme Court in *Piris v. Kitching*, criminals should not benefit from their own bad acts. 375 P.3d at 630. To the same effect, the New Hampshire Supreme Court noted that allowing criminal defendants to recover for malpractice without a showing of actual innocence would "engender disrespect for courts and generally discredit the administration of justice." *Mahoney v. Shaheen, Cappiello, Stein & Gordon P.A.*, 727 A.2d at 999-1000, *quoting State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504 (Mo. App. 1985).

Another important policy favoring an actual innocence requirement is that, as the Massachusetts Supreme Judicial Court observed in *Glenn v. Aiken*, "the public has a strong interest in encouraging the representation of criminal defendants, particularly those who are ruled to be indigent." 569 N.E.2d at 788. *Accord, Mahoney v. Shaheen, Cappiello, Stein & Gordon*, 727 A.2d at 1000. Most criminal defendants are represented by counsel appointed at public expense or by private counsel whose fees are not substantial. As the Massachusetts and New Hampshire courts have noted, the adoption of an actual innocence rule encourages representation of criminal defendants by reducing the risk of malpractice liability, while a contrary rule may dampen the willingness of lawyers to enter the criminal defense arena. *Glenn v. Aiken*, 569 N.E.2d at 788; *Mahoney v. Shaheen, Cappiello, Stein & Gordon P.A.*, 727 A.2d at 1000.[6] *Accord, Bailey v. Tucker*, 621 A.2d at 114.

---

[6] In *Wiley v. County of San Diego*, the California Supreme Court observed that if they were potentially exposed to a greater number of malpractice suits, criminal defense attorneys might practice "defensive" law more frequently to insulate themselves from liability. "In our already overburdened system it behooves no one to encourage the additional expenditure of resources merely to build a record again a potential malpractice claim." 966 P.2d at 991, quoting *Bailey v.*

A showing of actual innocence may not be required when, for instance, the claim of malpractice relates solely to sentencing. In a case subsequent to *Mahoney v. Shaheen, Cappiello, Stein & Gordon P.A.*, the New Hampshire Supreme Court ruled that a criminal defendant who acknowledged his guilt was not barred from bringing a malpractice claim asserting that his attorney had unilaterally forfeited his ability to seek a lesser sentence. *Hilario v. Reardon*, 960 A.2d 337 (N.H. 2008). That case, however, reaffirmed *Mahoney's* actual innocence requirement when a criminal defendant is arguing that if his attorney had not committed malpractice, he would not have been convicted. 760 A.2d at 344-45 (a plaintiff must still demonstrate his actual innocence when the claim is based upon an allegedly wrongful conviction or upon professional judgments intended to avert indictment or conviction).

In sum, for the reasons set forth above – and because the court concludes that if presented with this issue the Law Court would be likely to follow, among others, the courts of California, Illinois, Massachusetts, New Hampshire, and Washington – the court concludes that Dickey must plead and prove that she was actually innocent of the theft charge in order to pursue her malpractice claim against Sinclair.

In her amended complaint Dickey in fact alleges that she was innocent of the charges. First Amended Complaint ¶ 72. Sinclair, however, points out that the indictment in CR-12-7669 charges theft that occurred in Maine subsequent to August 27, 2012.[7] Sinclair

---

*Tucker*, 621 A.2d at 114. In *Bailey* the Pennsylvania Supreme Court noted that increased vulnerability to malpractice suits might also affect the willingness of criminal defense attorneys to exercise their independent legal judgment with respect to strategic and tactical decisions, such as whether to forego cross-examining a given witness. *Id.*

[7] The indictment specifically charges that "between August 28, 2012 and September 19, 2012, in Cape Elizabeth, Cumberland County, Maine, Alison Dickey did commit theft . . . ."

argues that none of the factual assertions relating to Dickey's innocence in her amended complaint address the charges of theft in Maine on or after August 28, 2012. Instead, Sinclair argues, the factual allegations relating to innocence in Dickey's amended complaint all concern alleged credit card charges incurred in Georgia prior to August 28, 2012. *See* First Amended Complaint ¶¶ 25-35 and particularly ¶¶ 36-37.

Dickey's conclusory statement of innocence, Sinclair argues, is insufficient without any supporting factual allegations directed to the alleged theft specifically charged in the Maine indictment.

Under the facts as alleged in the complaint, it may be difficult for Dickey to prove that she was actually innocent of any theft relating to post-August 27, 2012 credit card charges in Maine – as opposed to pre-August 28, 2012 credit card charges in Georgia. However, given Dickey's assertion of innocence, her allegation that she was told to use the Goldblatt credit card "for whatever you need," First Amended Complaint ¶ 25, and the rule that on a motion to dismiss the complaint must be construed in the light most favorable to plaintiff, Dickey's amended complaint is not subject to dismissal for failure to adequately allege innocence.

Unfair Trade Practice Act Claim

Sinclair argues that Maine's Unfair Trade Practice Act does not apply to legal services. There is at least one Superior Court decision to that effect, which noted the Legislature had rejected a bill that would have expressly applied the UTPA to attorneys. *Kyricos v. Bezanson,* 1999 Me. Super. LEXIS 350 (Superior Ct. Cumberland, order filed Dec. 27, 1999) (Delahanty, J.). Dickey points to a Law Court decision that can be read to assume

11

that the UTPA applies to lawyers although the decision did not expressly address the issue and upheld the dismissal of a UTPA claim against an attorney on other grounds. *Martin v. Sullivan,* 1997 ME 49 ¶¶ 6-7, 691 A.2d 203.

The court does not need to reach the question of whether the UTPA applies to lawyers generally because it concludes that the UTPA does not apply to the services of counsel appointed by the court to represent indigent or partially indigent defendants under the auspices of the Maine Commission on Indigent Legal Services (MCILS).

In such cases the attorney is not retained by the criminal defendant. The attorney is selected and appointed by the court. The attorney's qualifications and experience are not evaluated by a prospective client but by MCILS, which determines whether the attorney has the requisite qualifications to be placed on the roster of those who may be appointed to specific categories of cases, such as the felony theft charge at issue in this case.

The UTPA provides a civil remedy to any person who "purchases . . . services" for personal use and suffers a loss of money or property "as a result of the use or employment" of an unfair or deceptive trade practice. Regardless of the misrepresentations and/or omissions alleged in the amended complaint,[8] Dickey did not fit within the category of a person who "purchased" services from Sinclair within the meaning of 5 M.R.S. § 213(1). A person for whom an attorney is appointed by the court cannot be said to "purchase" the services of the lawyer. Moreover, Dickey did not suffer any loss of money or property "as a

---

[8] As noted above, Dickey contends that Sinclair represented that he was qualified to handle her case and did not tell her he had only been admitted to the bar two years earlier. She also contends that he did not disclose that he was distracted by family and personal issues. First Amended Complaint ¶ 81. Additionally, she complains that he represented that indigent clients would receive the same service as paying clients. *Id.* However, the equal treatment of indigent clients is required under the Maine Rules of Professional Conduct, *see* comment [3} to Rule 6.2, and a statement to that effect cannot constitute an unfair trade practice. 5 M.R.S. § 208(1)(B).

result of the use or employment" of deceptive trade practices within the meaning of 5 M.R.S. § 213(1). Sinclair had already been appointed by the court when he spoke to Dickey and any alleged misrepresentations or omissions that he made did not result in his retention as her attorney.

In reaching the above result, the court is relying on the docket sheet and the file in CR-12-7669, which demonstrate that Dickey filed a motion for appointment of counsel with a financial affidavit on December 11, 2012, that she was found partially indigent by District Court Judge Eggert on that date, that Judge Eggert ordered Dickey to pay $50 per month up to a total of $ 1250 to reimburse MCILS for attorneys fees, and that Judge Eggert simultaneously appointed David Sinclair to represent her. A notice of Sinclair's appointment, dated December 11, 2012, is also contained in the file. The last entry on the docket sheet shows that from January 2013 to March 2014 Dickey paid a total of $ 879 toward reimbursement of attorneys fees per Judge Eggert's order. These are all official public documents of which the court can take judicial notice and can consider under *Moody v. State Liquor and Lottery Commission*, 2004 ME 20 ¶¶ 8-10.

Notwithstanding the above, Dickey's amended complaint appears to allege that she engaged Sinclair as her attorney and paid him a fee to represent her. First Amended Complaint ¶ 52. If Dickey in fact contends that Sinclair was not her court-appointed lawyer and that the docket sheet in CR-12-7669 and the documents from the file in CR-12-7669 referred to above are all erroneous, she may file a motion for reconsideration of the court's ruling on her UFTA claim.

13

The entry shall be:

Defendant's motion to dismiss is denied as to count I of the complaint (Attorney Malpractice). Defendant's motion to dismiss is granted as to count II of the complaint (Unfair Trade Practice Act claim). The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 25, 2017

Thomas D. Warren
Justice, Superior Court

14