# IN THE SUPREME COURT OF IOWA

No. 16–1392

Filed March 16, 2018

**RAY J. KRAKLIO,**

Appellant,

vs.

**KENT SIMMONS,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, J. Hobart Darbyshire, Judge.

Criminal defense attorney seeks further review of court of appeals decision that reversed district court's summary judgment dismissing legal malpractice action. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT SUMMARY JUDGMENT REVERSED AND CASE REMANDED.**

Curtis R. Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Alfredo Parrish of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, and Kent A. Simmons, Bettendorf, pro se, for appellee.

**WATERMAN, Justice.**

This appeal presents the narrow question of whether the relief-required rule (also called the exoneration rule) applies to a convicted criminal suing one of his defense attorneys for legal malpractice over an alleged missed opportunity to shorten his period of supervised probation. This rule ordinarily requires proof the client had been exonerated from the underlying conviction. The defendant attorney was retained after the malpractice plaintiff was convicted and sentenced on three counts of welfare fraud and ordered to pay restitution. The attorney successfully obtained postconviction relief vacating two convictions and over $80,000 in restitution and successfully opposed the state's effort to have his client civilly committed as a sexually violent predator. Meanwhile, the offender, represented by separate counsel, was incarcerated for a probation violation. The district court later determined sua sponte that his term of supervised probation should have ended earlier, which would have avoided nearly a year in prison. The offender then sued one of his lawyers for malpractice.

The defendant attorney moved for summary judgment on four grounds. The district court reached only one ground and granted summary judgment based on the relief-required rule. The court of appeals reversed the summary judgment and held the client may sue over the alleged sentencing error without proving his exoneration from the conviction, so long as he obtained relief from the sentencing error. That is the position taken by the Restatement (Third) of the Law Governing Lawyers. We hold the malpractice plaintiff in this situation must prove relief from the sentencing error allegedly caused by the malpractice, not the underlying conviction. We express no opinion on the alternative grounds for summary judgment, including the scope of

this defendant–attorney's duty, if any, to monitor the duration of supervised probation. Those issues were not briefed or argued on appeal and may be decided by the district court on remand.

## I. Background Facts and Proceedings.

In November 2002, after a lengthy investigation into suspected welfare fraud, Ray J. Kraklio was charged with three counts of first-degree fraudulent practice in violation of Iowa Code sections 714.8(3) and 714.9 (2001). The facts are set forth in the decision of the court of appeals on his direct appeal, as follows:

> Beginning in the early 1980s the Iowa Department of Human Services (DHS) suspected that Kraklio was living with Debra Dirksen and that at least one of her two children, Tammy, who was born February 21, 1980, and Chad, who was born October 2, 1981, was Kraklio's child but that Dirksen and Kraklio were concealing this fact and his income contribution to the household in order to obtain welfare assistance, including food stamps, Family Investment Program (FIP) benefits (formerly Aid to Dependent Children (ADC) benefits), and Title XIX medical benefits. Between then and November of 2001 Child Support Recovery Unit (CSRU) personnel repeatedly questioned Dirksen as to whom the father of her children was or might be. Dirksen repeatedly maintained she had no idea who the father might be, and that Kraklio was not the father. Kraklio attended most of Dirksen's interviews by state personnel, was aware of what Dirksen told them, and himself denied he was the father of any of Dirksen's children. DHS records also indicate that during this same period of time Dirksen listed Kraklio as her landlord and daycare provider and the DHS used the rental and child-care figures provided by Dirksen to determine and increase her ongoing monthly public aid benefit amounts. Iowa Department of Inspections and Appeals (DIA) Investigator Randy Dodson was also aware of and worked on this case from time to time beginning in the early 1980s.
>
> In November 2001 Kraklio telephoned Investigator Dodson with a child support and welfare fraud complaint regarding his ex-wife. Dodson made arrangements to meet with Kraklio. Dirksen showed up with Kraklio for Dodson's November 28, 2001 interview. At the interview Kraklio and Dirksen revealed to Dodson that they had been together for twenty-one years. They stated they had only been married for about one year, but had only been apart for

approximately three months of the last twenty-one years. Dirksen and Kraklio also admitted to Dodson they had one child together, Chad Dirksen, born October 2, 1981. Based on this information Agent Dodson determined he should proceed to a criminal fraud investigation.

The fraud investigation continued for approximately a year until a trial information was filed on November 26, 2002.

*State v. Kraklio,* No. 03–0813, 2005 WL 156803, at *1 (Iowa Ct. App. Jan. 26, 2005).

Kraklio's first attorney negotiated a plea bargain in which Kraklio agreed to plead guilty to all three counts and pay restitution while the state agreed to recommend probation. The court accepted Kraklio's guilty plea and, on April 17, 2003, sentenced Kraklio to concurrent terms of not more than ten years, suspended the sentences, and placed him on five years of probation on each count to run consecutively. The court also ordered restitution totaling $139,489.

Kraklio met with his probation officer who, according to Kraklio, told him that if he appealed he would not be supervised during the appeal. Kraklio filed a pro se notice of appeal on May 16, 2003. On June 19, the district court appointed attorney Kent Simmons to represent Kraklio on this direct appeal. This is when Simmons's representation of Kraklio began.

Simmons promptly informed Kraklio that the probation officer was not required to suspend supervision because Kraklio had not posted an appeal bond. Kraklio declined to post an appeal bond. Simmons also advised Kraklio that he had the right to begin his supervised probation while the appeal was pending, but Kraklio chose not to do so.

Simmons moved for and obtained a limited remand to conduct discovery into statute of limitations defenses. Based on the fruits of his discovery, Simmons argued Kraklio's trial counsel was ineffective in

failing to argue that some or all charges were time-barred. In its decision on the direct appeal, the court of appeals concluded that Kraklio's trial counsel breached an essential duty by not determining "the possible viability of a statute of limitations defense." *Id.* at *6. The court of appeals found the record inadequate to determine prejudice on two counts; the court preserved those claims for postconviction proceedings. *Id.* at *8. On the third count the court determined Kraklio was not prejudiced by any breach of duty and rejected Kraklio's ineffective-assistance-of-counsel claim. *Id.* The court of appeals affirmed Kraklio's convictions on all counts, and procedendo issued on April 25, 2005.

Kraklio's supervised probation began in August. The probation officer asked Kraklio to sign a restitution plan to comply with the sentencing order, but Kraklio repeatedly refused to do so. In December, the probation officer filed a report of the probation violation, stating that he "resumed supervision of his case in August 2005" after Kraklio's appeal was denied. Simmons represented Kraklio on this probation violation. In February 2006, Kraklio signed a restitution plan in which he agreed to pay $12,000 annually until he paid $139,488 restitution in full.

Kraklio hired Simmons to represent him in a postconviction-relief (PCR) action, which Simmons filed in May. Pursuant to a fee agreement, Kraklio paid Simmons nearly $10,000 for preparing, filing, and litigating the PCR action.

In January 2008, Kraklio's probation officer filed another report of probation violation because Kraklio had failed to comply with the restitution plan. Kraklio applied for counsel, and the court appointed a different lawyer to represent him. After a hearing, the court revoked Kraklio's probation on January 31, 2008, and ordered him to prison.

On April 3, the PCR court granted a motion for summary judgment filed by Simmons and ordered Kraklio's convictions on two counts vacated as barred by the statute of limitations. This avoided over $80,000 in restitution.

Meanwhile, the Iowa Department of Corrections delayed Kraklio's release from prison pending a determination whether he was a sexually violent predator based on his 1978 conviction for lascivious acts with a child. Simmons successfully litigated a motion for reconsideration of sentence. On March 24, 2009, the court entered an order vacating the sentence of imprisonment. The court ordered Kraklio to immediately contact his probation officer, stating that "supervision shall continue as originally ordered herein."

Kraklio resumed supervised probation without contesting his probation status. He again failed to pay restitution, so the probation officer filed another report of violation of probation. A different attorney was appointed to represent Kraklio at the revocation hearing held on February 4, 2010. By this time, Kraklio's original probation officer had retired, and the new probation officer testified that Kraklio's original probation began in April 2003, not August of 2005:

> Q. Do your records indicate when the probation started for Mr. Kraklio? A. The original probation?
>
> Q. Right. A. I believe it was March of 2003.
>
> Q. Okay? A. Excuse me, April of 2003.
>
> Q. And was that probation ordered for any particular length of time? A. I believe it was ordered . . . for five years for each count.
>
> Q. And was that to be consecutive or concurrent? A. I believe it was consecutive.
>
> Q. When you make reference to the fact consecutive sentences for each count, that also would be affected by the dismissal of two of those counts in the interim, would it not? A. Possibly.

Q. Leaving only one count with a total of five years' probation, is that correct? A. Possibly.

Q. And that started in April of 2003? A. Correct.

Q. Has there been any motion filed or attempt made to extend the period of the defendant's probation since it was originally imposed [at] the beginning of 2003? A. Not to my knowledge, no.

At the conclusion of evidence and without arguments by counsel, the district court ruled from the bench that Kraklio's "maximum period of probation for the remaining offense for which he's been convicted has expired. Therefore, [Kraklio] will be discharged unsuccessfully from probation." The court did not specify the date when Kraklio's probation period expired.

In 2014, Kraklio sued Simmons for malpractice, specifically alleging that Simmons "took no steps to see that [Kraklio] was discharged from probation." Kraklio claimed that although he was not supervised until August 2005, he began probation immediately after his sentencing in 2003 while his case was on direct appeal. According to Kraklio, his probation should have been discharged on April 17, 2008. Kraklio argued that Simmons was negligent in failing to have Kraklio discharged from his probation earlier, which would have avoided almost a year of incarceration for violating a condition of probation.

On April 23, 2016, Simmons filed a motion for summary judgment, raising four independent grounds:

1. [Kraklio] must first gain relief through proceedings in the criminal case or in a postconviction proceeding that set aside the criminal conviction before he can pursue a claim for malpractice against his criminal defense attorney [the exoneration or relief-required rule];

2. Kraklio's probation officer chose not to supervise him while his convictions were on direct appeal. At the beginning of the appeal process, Simmons advised Kraklio he had the right to begin the Supervision while on appeal because he had not posted an appeal bond, and Kraklio

chose not to begin supervision. The supervision did not start until over two years after Kraklio was sentenced, and the five-year term had not expired when Kraklio was discharged;

3. Kraklio could not produce expert testimony to establish Simmons had a duty to calculate his probation expiration date and insure his discharge; and

4. Even if Kraklio could establish a duty and the discharge was past the expiration date, Kraklio could not establish any actual loss, injury or monetary damage.

Kraklio resisted Simmons's motion for summary judgment and retained an expert witness, W. Jon Henson, a criminal defense attorney with nearly thirty years of experience. In his affidavit, Henson stated,

> The probation issued to Ray Kraklio was never extended. Therefore, Mr. Kraklio's sentence should have discharged five years after his sentence was imposed. There is no provision in Iowa law which allows a probation officer to "suspend" his supervision of a defendant and then re-instate this when he chooses. The term of probation is set by Iowa law. The only time that probation is suspended and then re-instated in a case like this is if an appeal bond is posted. In this case there was no authority for Ray Kraklio to remain on supervision or incarceration after the five-year period had expired.

> At the time of this sentence, Ray Kraklio would have been subject to the *Anderson* ruling[1] and would have received credit for the time he was on probation. Therefore, even if Ray Kraklio's probation officer has chosen not to supervise him, then his probation and/or incarceration would not have been extended.

The district court granted Simmons's motion for summary judgment on the first ground, noting that "[i]ronically, the only relief achieved on Mr. Kraklio's behalf in this case was achieved by Simmons through his representation." The court concluded that Kraklio could not advance a legal malpractice claim against Simmons because Kraklio never achieved relief from his underlying conviction, as required by

---

[1]*See Anderson v. State*, 801 N.W.2d 1, 2 (Iowa 2011) (holding defendant is entitled to credit for time served while on supervised probation), *superseded by statutory amendment,* 2012 Iowa Acts ch. 1138, § 91 (codified at Iowa Code § 907.3 (2013)).

*Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016) ("[A] criminal defendant must 'achieve relief from a conviction before advancing a legal malpractice action against his former attorney.' " (quoting *Trobaugh v. Sondag*, 668 N.W.2d 577, 583 (Iowa 2003))). The court did not rule on any of the other grounds Simmons raised. Kraklio appealed, and we transferred the case to the court of appeals.

The court of appeals considered that "[a]lthough Kraklio did not initiate the proceedings in which he obtained his relief—i.e., the probation revocation proceedings—the factual record developed at the hearing by his counsel quite clearly resulted in the court's ruling finding his probation had expired." The court, therefore, determined that Kraklio obtained relief before filing his malpractice action.

The court continued,

> We must now address a question not yet addressed by an Iowa appellate court: In a lawsuit based on alleged malpractice on sentencing issues, must there be "prior relief" from the underlying conviction, or is "prior relief" from the sentencing issue that forms the basis of the lawsuit enough to allow the case to proceed?

In addressing this question, the court relied on a recent case in which the Kansas Supreme Court held that when a malpractice claim arises from an illegal sentence, the malpractice plaintiff—the defendant in the criminal case—is not required to prove he was actually innocent of the crimes but instead must "obtain post-sentencing relief from the unlawful sentence." *Garcia v. Ball*, 363 P.3d 399, 408 (Kan. 2015). The court of appeals acknowledged that in *Barker*, this court found a different Kansas Supreme Court case, *Mashaney v. Board of Indigents' Defense Services*, 355 P.3d 667 (Kan. 2015), persuasive. The court of appeals explained that *Garcia* applied the principles of *Mashaney*, which dealt with malpractice resulting in a conviction, to a different claim: malpractice in

a subsequent sentencing proceeding. The court reasoned, "If *Garcia* is a logical extension of *Mashaney*, then Kraklio's case is, similarly, a logical extension of *Barker*." The court of appeals concluded that "the same policy considerations [in *Barker*] support a finding the 'prior relief' requirement in this criminal legal malpractice action was satisfied when the district court in the probation-revocation proceeding declared Kraklio's probation had ended." Determining that the district court erred in relying on *Barker*, the court reversed the summary judgment and remanded for the district court to consider the alternative grounds for summary judgment it had not reached. The court of appeals acknowledged that it "ha[d] the authority to consider whether to affirm on grounds different than those on which the district court relied" but generally only does so "when those grounds have been urged and briefed on appeal." The alternative grounds Simmons originally presented to the district court were not urged or briefed on the appeal.

One judge dissented. While agreeing with the majority that Kraklio needed to obtain relief before proceeding with a malpractice action and that such relief "may be something other than relief from the underlying conviction," the dissenting judge "believe[d] the relief a legal malpractice plaintiff must obtain has to be based on the same grounds as alleged in the legal malpractice action." The dissent concluded that Kraklio did not obtain such relief. Kraklio had alleged that his probation should have discharged on April 17, 2008, and that from that date through February 4, 2010, Simmons did nothing to see that Kraklio was discharged from prison. However, the district court in the 2010 probation revocation proceeding made no finding that Kraklio's probation was discharged on April 17, 2008, instead simply concluding that Kraklio's "maximum period of probation . . . has expired." Because

Kraklio failed "to obtain criminal relief on the grounds he alleged in his legal malpractice action—i.e. that his probation . . . expired on April 17, 2008," the dissent would conclude the district court did not err in granting summary judgment.

We granted Simmons's application for further review.

**II. Standard of Review.**

"We review grants of summary judgment for correction of errors at law." *Barker*, 875 N.W.2d at 161. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 235 (Iowa 2015)). We view the record in the light most favorable to the nonmoving party. *Id.*

**III. Analysis.**

This case requires us to determine whether a criminal defendant suing his criminal defense attorney for legal malpractice over a sentencing error must prove he obtained relief from the underlying conviction. The court of appeals correctly noted that the case presents a question of first impression in Iowa.

**A. Iowa's Relief-Required Rule.** A plaintiff must prove the following elements to recover for legal malpractice arising from either civil or criminal representation:

> (1) the existence of an attorney–client relationship between the defendant and plaintiff giving rise to a duty; (2) the attorney, by either an act or a failure to act, breached that duty; (3) this breach proximately caused injury to the plaintiff; and (4) the plaintiff sustained actual injury, loss, or damage.

*Huber v. Watson*, 568 N.W.2d 787, 790 (Iowa 1997). We have recognized an additional requirement for clients suing their criminal defense attorney for malpractice: a criminal defendant must "achieve relief from a

*conviction* before advancing a legal malpractice action against his former attorney." *Trobaugh*, 668 N.W.2d at 583 (emphasis added). In *Trobaugh*, the client blamed his conviction on his lawyer's negligent representation. *Id.* at 579. We explore that case in detail to see how the relief-required rule should apply when the alleged malpractice relates to a sentencing issue (here, the duration of supervised probation) rather than the underlying conviction.

Charles Trobaugh was charged "with assault with intent to inflict serious injury, assault with a dangerous weapon, and possession of a firearm by a felon." *Id.* Assistant County Attorney Patrick Sondag signed the initial complaints against Trobaugh. *Id.* Sondag later was hired as an assistant public defender in the same county and became Trobaugh's defense attorney in the same case. *Id.* Trobaugh eventually accepted a plea agreement and pled guilty to displaying a dangerous weapon and possession of a firearm by a felon. *Id.* Trobaugh was incarcerated for eleven months. *Id.*

Trobaugh later was convicted of a federal drug offense. *Id.* Trobaugh's new attorney discovered that Sondag had signed the initial complaint against Trobaugh and then represented him in his defense against the same charges. *Id.* Trobaugh raised Sondag's potential conflict of interest as a ground for relief in a PCR action, which was dismissed as time-barred. *Id.* Trobaugh filed another PCR application. *Id.* This application was successful, and Trobaugh was granted a new trial in November 2000. *Id.* He pled guilty to the charge of possession of a firearm by a felon, but the two other charges were dismissed. *Id.*

Trobaugh then filed a claim for money damages with the State Appeal Board under the Iowa Tort Claims Act, arguing that Sondag, as a state employee, committed legal malpractice in his representation of

Trobaugh. *Id.* After the board denied his claim, Trobaugh filed a civil action against Sondag for legal malpractice. *Id.* at 579–80. Sondag moved to dismiss the claim on multiple grounds, including that Trobaugh's tort claim was barred by the two-year statute of limitations in Iowa Code section 669.13 (2001). *Id.* at 580. The district court determined Trobaugh's claims were untimely because they accrued in June 1997 when Trobaugh first discovered Sondag's potential conflict of interest. *Id.* The court granted Sondag's motion to dismiss, and Trobaugh appealed. *Id.*

Trobaugh argued that his claim accrued when the PCR court granted him a new trial. *Id.* at 581. Accordingly, his state tort claim was timely. *Id.* Sondag, however, argued that Trobaugh's malpractice claim was time-barred because he discovered the alleged malpractice years earlier when his new attorney discovered Sondag had worked on both sides of the original criminal case. *Id.* We acknowledged that "our resolution hinge[d] on whether a claim for legal malpractice in the criminal case context can be discovered prior to the plaintiff receiving relief from the conviction that allegedly resulted from negligent representation." *Id.* We analyzed the various approaches used by courts in other jurisdictions, noting that some courts require relief from a conviction before a criminal defendant can successfully sue a former attorney for malpractice. *Id.* at 582. We explained that under this "relief-required approach" a claim for malpractice accrues when relief from a conviction is granted. *Id.* We acknowledged multiple policy reasons for using the relief-required approach:

> equitable principles against shifting responsibility for the consequences of the criminal's action; the paradoxical difficulties of awarding damages to a guilty person; theoretical and practical difficulties of proving causation; the

> potential undermining of the postconviction process if a legal malpractice action overrules the judgments entered in the postconviction proceedings; preserving judicial economy by avoiding relitigation of settled matters; creation of a bright line rule determining when the statute of limitations runs on the malpractice action; availability of alternative postconviction remedies; and the chilling effect on thorough defense lawyering.

*Id.* (quoting *Canaan v. Bartee*, 72 P.3d 911, 916 (Kan. 2003)).

We also recognized that some courts do not require a criminal defendant to obtain relief from a conviction before bringing a legal malpractice claim. *Id.* Rather, "a claim for legal malpractice is found to accrue before relief from a conviction is achieved, often upon the discovery of the facts related to the attorney's negligent conduct." *Id.* But we concluded "that the approach that requires a defendant to achieve relief from a conviction before advancing a legal malpractice action against his former attorney is superior in this particular area of the law." *Id.* at 583. We held that a claim for legal malpractice arising from a criminal case does not accrue until relief from a conviction is obtained. *Id.*

In *Trobaugh*, we "avoid[ed] the question of what role, if any, the plaintiff's guilt or innocence plays in advancing a claim for legal malpractice." *Id.* at 583 n.4. That question was squarely presented in *Barker*. Robert Barker placed graffiti in a public restroom, "inviting young males interested in oral sex to contact a certain email address." *Barker*, 875 N.W.2d at 158. Public complaints about the graffiti prompted law enforcement to investigate. *Id.* An Iowa Division of Criminal Investigation agent posed as a fifteen-year-old male "Jayson" and established online contact with Barker, who arranged to meet "Jayson" for sex. *Id.* When Barker arrived at the arranged location, he was arrested. *Id.* The state charged him with attempted enticement of a

minor and lascivious acts with a child. *Id.* The court later granted the state's request to amend the second count to solicitation of a minor to commit a sex act. *Id.*

Barker agreed to plead guilty to the amended charge of solicitation of a minor. *Id.* The state agreed to dismiss the count of attempted enticement and recommend a suspended sentence and probation on the condition that Barker complete sex offender treatment through a residential treatment facility. *Id.* Barker consulted with his attorney, Thomas Magee, about whether to plead guilty. *Id.* at 159. Magee later closed his law office and withdrew from further representation, and the district court appointed Donald Capotosto to represent Barker. *Id.*

After Barker's plea and sentencing hearing, the district court sentenced him to five-year's imprisonment, suspended the sentence, and placed Barker on probation for the duration of his sentence. *Id.* The sentencing order prohibited Barker from engaging in unsupervised contact with minors and provided that all internet access had to be preapproved by Barker's probation officer. *Id.* The order allowed Barker to complete outpatient sex offender treatment through Catholic Charities rather than mandating commitment to a residential treatment facility. *Id.*

Barker failed to comply with the treatment services at Catholic Charities and was discharged from its program. *Id.* A home visit revealed that Barker violated his probation through unauthorized internet use and "had images of young males on his computer." *Id.* The district court ordered Barker into a residential treatment facility once space became available, and Barker was admitted to the facility in March 2008. *Id.* He was unsuccessfully terminated from the residential treatment facility, and the district court revoked Barker's probation "and

sentenced him to imprisonment for a term not to exceed five years with credit for time served." *Id.* at 159–60.

"Barker filed an application for postconviction relief from his conviction for solicitation of a minor." *Id.* at 160. He claimed ineffective assistance of counsel "because there was no factual basis for his guilty plea to solicitation of a minor to engage in a sex act." *Id.* The district court granted the application on February 28, 2011, reasoning that Barker would have had to solicit someone else to commit the actual crime and that Barker had not done so. *Id.*[2] The district court vacated Barker's conviction and sentence, concluding that Barker's counsel failed to perform an essential duty and the defendant was prejudiced by the conviction entered upon the defective plea. *Id.*

Barker filed a malpractice action alleging that Magee and Capotosto negligently advised him to plead guilty to an offense without a factual basis. *Id.* The defendant lawyers moved for summary judgment, arguing that Barker must prove his actual innocence and could not establish that he was factually innocent in the underlying criminal case.[3] *Id.* The district court granted summary judgment, concluding that actual innocence must be established. *Id.*

---

[2]As we noted in *Barker*,

> The amended count sought to charge an inchoate crime (Iowa has no general attempt statute) by combining Iowa Code section 705.1's general prohibition on soliciting other persons to commit crimes with section 709.4(2)(*c*)(4)'s prohibition on performing a sex act with a person who is fourteen or fifteen years of age when the person committing the act is four or more years older. The problem with this effort, as became apparent years later, is that Barker wasn't soliciting *someone else* to commit the crime of sexual abuse; he was attempting to commit that crime himself.

875 N.W.2d at 158 n.1.

[3]Barker did not dispute that his conduct amounted to attempted enticement of a child, as charged in the original trial information. *Barker,* 875 N.W.2d at 160.

On appeal, we considered the approaches of other courts regarding whether proof of actual innocence is required when a criminal defendant sues his defense attorney for malpractice. *See id.* at 161–67. We noted that a majority of jurisdictions which have considered the issue adopted an "actual innocence" requirement. *Id.* at 161. We identified the rationales for the actual-innocence requirement, including that it would violate public policy to allow a person to profit from participation in illegal acts and that requiring "actual innocence prevents the former criminal defendant from shifting the responsibility for his or her conviction." *Id.* at 163.

We next considered the Alaska approach, which allows the criminal defense attorney to raise actual guilt as an affirmative defense to the malpractice suit. *Id.* at 164 (citing *Shaw v. State*, 861 P.2d 566, 572 (Alaska 1993)). The criminal defense attorney is required to prove the former client's guilt by a preponderance of the evidence but is not limited to evidence admissible in the criminal case. *Id.*

Finally, we considered the approach of courts that have rejected the actual-innocence requirement. *See id.* at 164–67. We specifically examined *Mashaney*, in which the Kansas Supreme Court declined to adopt the actual-innocence requirement. *Id.* at 165. The *Mashaney* court gave several reasons, including that, regardless of innocence, a criminal defendant is legally injured by being convicted and imprisoned if his or her defense counsel "fails to demonstrate the State's inability to prove guilt beyond a reasonable doubt when a competent lawyer could have and would have done so." *Id.* (quoting *Mashaney*, 355 P.3d at 684).

Courts analyze an actual innocence requirement as a component of proximate cause. "Underlying the . . . requirement . . . that [a] plaintiff must have obtained postconviction relief . . . is the principle that absent

relief from a conviction or sentence, the criminal plaintiff's own actions are presumably the proximate cause of his injury." *Jones v. Link*, 493 F. Supp. 2d 765, 769 (E.D. Va. 2007); *cf. Mashaney*, 355 P.3d at 674 ("[U]ntil a plaintiff has been exonerated, his or her criminal conduct and not his or her attorney's negligence is the proximate cause of his or her incarceration." (quoting *Canaan*, 72 P.3d at 920–21). The Oregon Supreme Court, in adopting the "exoneration rule," explained that "while the conviction and sentence remain valid for all other purposes, it is inappropriate to treat a complaining convicted offender as having been 'harmed' in a legally cognizable way by that conviction." *Stevens v. Bispham*, 851 P.2d 556, 562 (Or. 1993) (en banc).

In *Barker*, we declined to follow the majority rule requiring actual innocence and, instead, relied on the causation provision in section 53 of the Restatement (Third) of the Law Governing Lawyers. 875 N.W.2d at 165–66. A comment to that provision states,

> A convicted criminal defendant suing for malpractice must prove both that the lawyer failed to act properly and that, but for that failure, the result would have been different . . . . Although most jurisdictions addressing the issue have stricter rules, under this Section it is not necessary to prove that the convicted defendant was in fact innocent. As required by most jurisdictions addressing the issue, a convicted defendant seeking damages for malpractice *causing a conviction* must have had that conviction set aside when process for that relief on the grounds asserted in the malpractice action is available.

Restatement (Third) of the Law Governing Lawyers § 53 cmt. *d*, at 392 (Am. Law. Inst. 2000) (emphasis added). We found the approach of the Restatement (Third) to be persuasive. *Barker*, 875 N.W.2d at 166. We held that a criminal defendant is not required to prove actual innocence before bringing a malpractice claim against a former defense attorney. *Id.* at 168. But we emphasized that the malpractice plaintiff must obtain

judicial relief from the avoidable conviction blamed on the malpractice, as set forth in *Trobaugh*. *Id.* at 166. Importantly, neither *Barker* nor *Trobaugh* involved malpractice premised on a sentencing error rather than the conviction.

**B. Application of the Relief-Required Rule to a Sentencing Error.** We now must determine whether *Trobaugh* and *Barker* require Kraklio to prove he obtained relief from his underlying conviction. Kraklio argues those cases are inapplicable because "the facts in those matters are not similar to the facts in this case and the claim is not based on the same issues." Kraklio does not deny he committed the crime. He does not argue that he was wrongfully convicted. Instead, Kraklio argues that he should be able to sue Simmons for malpractice based on Simmons's failure to ensure that Kraklio was released from probation on April 17, 2008. Kraklio argues that he is not required to show relief from his conviction, but need only prove the elements of legal malpractice set forth in *Huber*, 568 N.W.2d at 790 ("(1) the existence of an attorney–client relationship between the defendant and plaintiff giving rise to a duty; (2) the attorney, by either an act or a failure to act, breached that duty; (3) this breach proximately caused injury to the plaintiff; and (4) the plaintiff sustained actual injury, loss, or damage").[4]

Simmons, on the other hand, urges us to require relief from the conviction under *Trobaugh* and *Barker* and hold that the district court correctly granted summary judgment because Kraklio obtained no relief from the conviction underlying his sentence of probation. And Simmons

---

[4]Other courts have equated the elements of proof for legal malpractice claims arising from criminal and civil representation. *See, e.g.*, *Krahn v. Kinney*, 538 N.E.2d 1058, 1061 (Ohio 1989) (collecting cases and holding that the elements of proof for legal malpractice are the same regardless of whether the action arises from civil or criminal representation).

argues that Kraklio failed to preserve error by not presenting the district court with any legal authority suggesting that the relief-required rule should be changed or any policy arguments on why the rule should not apply to his case. Kraklio, however, did argue that "[t]he claims in this case are not similar to" *Barker* and *Trobaugh*. We conclude that Kraklio preserved error. *See Estate of Gottschalk v. Pomeroy Dev., Inc.*, 893 N.W.2d 579, 585 (Iowa 2017) (explaining that the error preservation rule requiring a party to raise and obtain a decision on an issue in district court before an appellate court decides the issue "serves the purpose of ensuring both opposing counsel and the district court receive notice of the basis for a claim at a time when corrective action is still possible").

We conclude *Barker* and *Trobaugh* are distinguishable because the malpractice in those cases led to an avoidable conviction while Kraklio claims Simmons missed the opportunity to end his probation sooner without blaming him for the underlying conviction. We follow the Restatement (Third) of the Law Governing Lawyers, section 53, as we did in *Barker*. This means Kraklio must show relief from the duration of his supervised probation, not the underlying conviction. *Garcia*, correctly applied here by our court of appeals, illustrates how the relief-required rule works in this situation. *See* 363 P.3d at 406–07. George Michael Garcia's legal malpractice claim related to an illegal sentence rather than a wrongful conviction. *Id.* Garcia was ordered to serve postrelease supervision following his prison term, even though this was prohibited by a Kansas statute. *Id.* at 401–02. Garcia's attorney, Charles Ball, did nothing to correct Garcia's sentence, even after being notified of the mistake by the Kansas Department of Corrections. *Id.* at 402. While Garcia was serving this unlawful postrelease supervision, he was charged with burglary, pled guilty, and was incarcerated. *Id.* Because

he committed the burglary while on postrelease supervision, Garcia was subject to a sentencing rule that required him to serve the remaining part of his postrelease supervision term in prison. *Id.* Garcia contacted Ball multiple times to inform him of the mistake, but Ball took no action. *Id.* Garcia filed a pro se motion to correct an illegal sentence, and the court entered a nunc pro tunc order that released him from prison. *Id.*

The Kansas Supreme Court held that Garcia was not required to prove he was actually innocent of the crimes for which he was convicted but instead "was required to obtain post-sentencing relief from the unlawful sentence." *Id.* at 408. The *Garcia* court determined that this occurred "when the district court acknowledged that it had imposed an illegal sentence by entering a nunc pro tunc order, setting aside the illegal postrelease supervision term." *Id.*

We agree with *Garcia*'s reasoning, which correctly applies the Restatement (Third) approach. We hold that a criminal defendant suing his defense lawyer over a sentencing error must obtain postjudgment relief on the sentencing issue, but need not prove relief from the underlying conviction. *See id.*; *see also Jones*, 493 F. Supp. 2d at 769–71 (requiring criminal defendant to allege he obtained postconviction *sentencing* relief before suing his attorney for malpractice when the criminal defendant "complains that his attorney's negligence resulted in a sentencing error");[5] *Johnson v. Babcock*, 136 P.3d 77, 78 (Or. Ct. App.

---

[5]In rejecting the actual-innocence requirement in that circumstance, the *Jones* court described a hypothetical situation that mirrors Kraklio's situation:

> [I]t is appropriate to examine the consequences of a contrary holding in a situation not presented here, namely where an attorney's negligence resulted in a legally impermissible sentence that is not corrected until after plaintiff has already served a longer sentence than legally warranted. In such a case, any available appellate, post-conviction, or habeas corpus remedies would not sufficiently redress plaintiff's injury, that is his unlawfully prolonged incarceration, and in these

2006) (holding that it is sufficient for criminal defendant to allege that defense attorney's negligence resulted in a sentencing error and that defendant obtained postconviction sentencing relief).

Similarly, the New Hampshire Supreme Court held the malpractice plaintiff need not prove actual innocence when suing over a sentencing error. *Hilario v. Reardon*, 960 A.2d 337, 345 (N.H. 2008). Jose Hilario was indicted on several charges and pled guilty to all of them. *Id.* at 339. The plea agreement provided that the state would petition for suspension of part of his sentence if Hilario cooperated in other prosecutions. *Id.* Hilario's attorney, Neil Reardon, filed a motion to withdraw Hilario's plea regarding some of the charges, allegedly without Hilario's authorization or knowledge. *Id.* The motion was denied. *Id.* When Hilario later filed a motion to suspend part of his sentence pursuant to the plea agreement, the state objected, arguing that Hilario breached the plea agreement by attempting to withdraw his plea. *Id.* Hilario sued Reardon for malpractice based on his filing the motion to withdraw Hilario's guilty plea. *Id.*

Reardon argued that Hilario's claim was barred by *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 727 A.2d 996 (N.H. 1999). *Id.*

_____

circumstances, plaintiff's "case [would be] more akin to that of an innocent person wrongfully convicted than of a guilty person attempting to take advantage of his own wrongdoing." It follows then that like the "innocent person wrongfully convicted due to inadequate representation [he] has suffered a compensable injury [and] the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss." Thus, the actual innocence requirement should not apply where plaintiff alleges that his attorney's negligence resulted in a sentencing error because to hold otherwise would deprive a plaintiff subjected to an unlawfully prolonged incarceration due to his attorney's negligence of redress for his injury.

493 F. Supp. 2d at 770 (alterations in original) (first quoting *Powell v. Associated Counsel for the Accused*, 129 P.3d 831, 833 (Wash. Ct. App. 2006); and then quoting *Wiley v. County of San Diego*, 966 P.2d 983, 987 (Cal. 1998)).

In *Mahoney,* the New Hampshire Supreme Court held that "a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence." 727 A.2d at 998–99. The *Hilario* court noted, "In *Mahoney* and other cases applying similar standards, courts are generally concerned with malpractice actions that, even if they do not directly challenge the underlying conviction, tend to undermine or indirectly challenge it." 960 A.2d at 343. The *Hilario* court concluded,

> [W]here the alleged legal malpractice occurred after the plea and sentencing, where the claim is unrelated to any strategic or tactical decision relating to the plaintiff's convictions, and where the plaintiff does not argue that but for his attorney's negligence he would have obtained a different result in the criminal case, the legal malpractice action is not barred by *Mahoney.*

*Id.* at 345. The court found *Mahoney* distinguishable because

> the malpractice alleged does not challenge [Hilario's] convictions and is not an argument that if his attorney had acted differently, a different result would obtain. He has not, and does not now, challenge any tactical or strategic decision bearing upon his convictions.

*Id.* at 343. The New Hampshire Supreme Court later characterized *Hilario* as "limited to those situations where the client's malpractice claims are unrelated to underlying guilt or innocence." *Gaylor v. Jeffco,* 999 A.2d 290, 293 (N.H. 2010).

These cases reflect the Restatement (Third) position we adopt today. Because Kraklio does not allege Simmons negligently caused his conviction, Kraklio need not prove relief from that conviction. But the relief-required rule still applies to the alleged sentencing error. That is, Kraklio must prove he obtained relief from his period of supervised probation that he claims Simmons should have ended sooner. *See* Restatement (Third) of the Law Governing Lawyers § 53, at 389 ("A

lawyer is liable . . . only if the lawyer's breach of a duty of care or breach of fiduciary duty was a legal cause of injury, as determined under generally applicable principles of causation and damages."); *id.* reporter's note cmt. *d,* at 397–98 (collecting cases holding collateral relief from the conviction is not required when the malpractice plaintiff does not challenge the conviction); *see also Johnson,* 136 P.3d at 80 ("An unlawful restraint of liberty can constitute harm . . . ."); *Powell v. Associated Counsel for the Accused,* 129 P.3d 831, 833 (Wash. Ct. App. 2006) ("His unlawful restraint beyond th[e maximum] period [allowed by law] was not a consequence of his own actions.").

The district court hearing Kraklio's revocation challenge ruled that his probation actually had ended while he was incarcerated for the probation violation. We conclude this ruling constituted sufficient relief from the alleged sentencing error to avoid summary judgment under the relief-required rule.[6]

Simmons acknowledges that his alternative grounds for summary judgment are not at issue on this appeal. Those may be addressed by the district court on remand.

## IV. Disposition.

For these reasons, we affirm the decision of the court of appeals. We reverse the district court's summary judgment and remand the case for further proceedings.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT SUMMARY JUDGMENT REVERSED AND CASE REMANDED.**

---

[6]We disagree with the dissent on the court of appeals that would find this claim barred because the revocation court failed to specify the exact date the probation period expired.