# IN THE COURT OF APPEALS OF IOWA

No. 21-1117
Filed June 15, 2022

**MICHAEL MCKEE AND DIANE MCKEE,**
    Plaintiff-Appellants,

**vs.**

**CITY OF COUNCIL BLUFFS, IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, Michael Hooper, Judge.

Michael and Diane McKee appeal an adverse summary judgment ruling. **REVERSED AND REMANDED.**

Dane J. Schumann and Steven P. Wandro of Wandro & Associates, PC, Des Moines, for appellants.

Sara E. Bauer, Assistant City Attorney, Council Bluffs, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

Our appellate courts are no strangers to drainage disputes between neighboring landowners. But this case is a twist on the typical scenario because of an express easement requiring Michael and Diane McKee, the owners of lower-lying land, to install and maintain a drainage easement for water flowing from higher land owned by the City of Council Bluffs (City). The McKees brought suit against the City for relief relating to that easement. The district court granted summary judgment in favor of the City, and the McKees appeal. Because we find summary judgment was inappropriate on the bases cited by the court, we reverse and remand for further proceedings.

## I.    Background Facts and Proceedings

In 1987, the McKees purchased real property situated north of and abutting Simms Avenue. Simms Avenue is now owned by the City. According to the amended petition, the McKees' home is located "down a lane a few hundred yards away from Simms Avenue" and, when they purchased the property, "a small amount of drainage from Simms Avenue ran into a small ditch parallel with the McKees' lane that accessed their home" and this "drainage channel continued North, passing under the McKee's driveway and then meandering downstream until crossing the McKees' Northern property line."

Beginning in early 1992, the McKees entered into a purchase agreement and various addendums to sell a southern strip of their property abutting the north side of Simms Avenue to Duggan Land Development, Inc. (Duggan)—which Duggan would develop as a single-family subdivision called Northern Oaks—with the McKees retaining a right of way to Simms Avenue for their driveway. The

portion of land attributable to the McKees' pre-existing driveway would ultimately come to be known as Lot 7. In March, Duggan and the City entered into a subdivision agreement concerning the final plat consisting of the twelve-lot subdivision. The agreement required Duggan to complete certain steps before the City would issue final plat approval.

On April 16, the McKees deeded the strip of land to Duggan. The same day, Lot 7, "as shown in a survey drawing by Paul M. Kline dated April 7, 1992," was deeded back to the McKees by Duggan. The following is a portion of the Kline survey that was referenced in the deed:



As the image demonstrates, the striped portion of Lot 7, just east of the "existing drive," is a "PRIVATE 10' STORM DRAINAGE EASEMENT," and the survey provides: "THIS DRAINAGE EASEMENT AND DRAINAGE SYSTEM IS TO BE INSTALLED AND MAINTAINED BY THE OWNER AND HIS OR HER ASSIGNS OF LOT 7 OF NORTHERN OAKS SUBDIVISION."

The McKees have experienced drainage problems over the years. In October 1992, the McKees filed a claim with the City regarding drainage issues on their property, complaining the paving of Simms Avenue changed their drainage and caused problems with flooding and silting. The City responded "the drainage in this area" was governed by agreements between the McKees and Duggan. In March 1993, the McKees' legal counsel wrote to the City and essentially challenged the existence of an easement and their responsibility to maintain the drainage system on Lot 7. The McKees requested the City to maintain the storm sewer. The City responded that the owner of Lot 7 was responsible for maintaining the system. In 2001, despite the fact that "a storm drainage system was installed in th[e] easement on or about the year of 1997," the owner of Lot 8 threatened legal action against the McKees over the inadequacy of the system and its state of disrepair. The McKees apparently had additional work done in the area to remedy the issue, for which the owner of Lot 8 provided the McKees with some financial assistance.

Ultimately, in August 2020, the McKees commenced this litigation against the City. In their petition, the McKees essentially asserted they never "agree[d] to maintain any easement on Lot 7" and, due to the subdivision improvements and infrastructure, they experience flooding and erosion from drainage. The McKees

alleged the City is the dominant estate holder of any easement on Lot 7 and the continued flowage path of drainage across the remainder of their property. The McKees sought equitable relief in the form of mandamus and declaratory relief on their claims that the City is responsible for repairing and maintaining the easement and remainder of their property. The McKees also alleged the drainage on their property amounts to a private and pure nuisance and the invasion of their property is an unconstitutional taking.

In time, the City filed a motion for summary judgment. In its ruling, the court found the McKees' dealings with Duggan resulted in an express easement on Lot 7, which placed the burden of maintenance on the owners and assigns of Lot 7 rather than on the dominant estate holder. The court also found Lot 7 is dominant to the remainder of the McKees' property and, because the McKees own both, they are also responsible for maintaining the portion of their property north of Lot 7. The court accordingly found the City was entitled to judgment as a matter of law on the McKees' claim for repairs and maintenance by the City in counts one and two of the petition. As for the nuisance claims in counts three and four, the court found those claims were time-barred, as was the unconstitutional taking claim in count five. So the court entered summary judgment in favor of the City. The McKees appeal, confining their claims to the court's ruling on counts two, three, and four.

## II. Standard of Review

"The standard of review for district court rulings on summary judgment is for correction of errors of law." *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 806 (Iowa 2018). Summary judgement is only appropriate when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In determining whether a grant of summary judgment was appropriate, we examine the record in the light most favorable to the nonmoving party, drawing all legitimate inferences that may be drawn from the evidence in his or her favor." *Homan v. Branstad*, 887 N.W.2d 153, 163–64 (Iowa 2016). Summary judgment is appropriate "if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015) (quoting *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008)).

## III.　Analysis

### A.　Count Two—Cleaning and Maintenance

In reviewing the propriety of summary judgment on count two, we begin with a little housekeeping. The McKees forwarded two separate claims seeking a determination that the City was required to clean and maintain the drainage easement. Count one sought relief requiring the City, as the dominant estate holder, to repair and maintain the easement on the Lot 7 portion of their property. Count two sought the same relief, but as to the drainage path that continues on the portion of their property north of Lot 7. The district court granted summary judgment on both counts and denied the McKees their requested relief.

The McKees do not challenge the entry of summary judgment on count one relating to Lot 7. Because "our review is confined to issues presented on appeal taken from the . . . judgment," the entry of summary judgment on count one serves as a final adjudication on the issue of whether the City is required to clean and maintain the easement on Lot 7. *See Helland v. Yellow Freight Sys., Inc.*, 204 N.W.2d 601, 605 (Iowa 1973); *accord Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa

2010) ("Our obligation on appeal is to decide the case within the framework of the issues raised by the parties. Consequently, we do no more and no less." (internal citation and footnote omitted)).

The City argues this is the end of the inquiry for count two because the "McKees have an express easement obligation concerning . . . installing and maintaining the drainage system; to separate this obligation from the . . . water passing to the remainder of McKees' own property is not sound law as proposed by McKees." The McKees say that with this argument, the City is basically asserting "it can dump all the water it wants down Lot 7 and into the McKees homestead without any consequence whatsoever." According to the McKees, the distinction between counts one and two is critical in rejecting that notion because who is responsible for Lot 7 under count one is governed by an express easement, while who is responsible for the remainder of the McKees' property under count two is not.

Dialing in on this argument, the McKees maintain the district court failed to account for the merger doctrine as it relates to Lot 7 and the northern part of their property. We agree that when Lot 7 was deeded back to the McKees and they became owners of both properties, they merged and any easement between Lot 7 and the northern property was extinguished. *See Gray v. Osborn*, 739 N.W.2d 855, 862 (Iowa 2007); *Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 837 (Iowa 1976). This is because "one has no need of an easement over one's own property." *Campbell v. Waverly Tire Co.*, No. 02-1948, 2003 WL 23008846, at *4 (Iowa Ct. App. Dec. 24, 2003). So, based on the merger doctrine, the McKees are correct

that Lot 7 is not dominant to the northern property, and the court's entry of summary judgment on that basis was legal error.

True, the McKees are responsible for maintaining the express easement on Lot 7. But Simms Avenue is dominant to both Lot 7 and the north portion of the property. According to the district court, the McKees are only responsible for Lot 7 because the documents creating the express easement on that lot overruled the general rule that the easement holder is responsible for repairing and maintaining the easement. *See Koenigs v. Mitchell Cnty. Bd. of Supervisors*, 659 N.W.2d 589, 594 (Iowa 2003). What lies beyond Lot 7 on the northern portion of the McKees' property and who is responsible for it remains a genuine issue of material fact subject to legal underpinnings the district court did not address.[1] *Cf. Halsrud v. Brodale*, 72 N.W.2d 94, 97–98 (Iowa 1955) (stating "an easement, whether created by written grant, implication, or prescription," cannot be "increased or extended without the consent of the owner of the servient tenement"). Having concluded the City was not entitled to judgment as a matter of law on the basis that the district

---

[1] In district court, the McKees maintained the drainage path on the northern property has always been a natural easement servient to Simms Avenue subject to general easement principles. *See, e.g.*, *Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973) ("The general principle of law is 'that the owner of the upper or dominant estate has a legal and natural easement in the lower or servient estate for the drainage of surface waters, that the natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor . . . and that the owner of the dominant estate may cast an additional quantity of surface water upon the servient estate; if in so doing, he does not thereby do substantial damage to the servient estate.'" (citation omitted)). They also claimed it was a prescriptive easement and lack of contiguousness between a dominant estate and a prescriptive or natural drainage easement does not cut off the dominant estate's responsibility to maintain. *Cf. Nixon v. Welch*, 24 N.W.2d 476, 477 (Iowa 1946) (finding dominant estate holder had a drainage easement through a neighbor's property, under a county road, and into the servient landowner's ditch).

court determined it was, we reverse the entry of summary judgment on count two and remand for further proceedings.[2]

### B.    Counts Three and Four—Nuisance

The McKees challenge the district court's entry of summary judgment on their nuisance claims on statute-of-limitations grounds.   In resisting summary judgment, the McKees asserted "the statute of limitations bars only those damages that accrue beyond five years from the date of the suit's filing," and the damage to their property is recurrent "with every significant rain event."  As such, the McKees argued the continuing nuisance entitled them to relief for damages dating back five years from the filing of their petition.  The City responded the McKees failed to prove any damages that are recurrent and the nuisance was caused by the McKees' failure to maintain the easement for more than two decades.

---

[2] We note the City's motion for summary judgment on count two was also based on statutes of limitations relating to injuries and improvements to property.  *See* Iowa Code § 614.1(4), (11)(a)(2), (3) (2020).  The district court did not address whether the claim was time-barred, and the City does not pursue that avenue on appeal.  Although we have discretion to affirm on an alternative ground that was urged below, *State ex rel. Dickey v. Besler*, 954 N.W.2d 425, 432 (Iowa 2021), we decline to do so here because the City does not ask us to.  *See Kraklio v. Simmons*, No. 16-1392, 2017 WL 4049488, at *2 n.2 (Iowa Ct. App. Sept. 13, 2017), *aff'd*, 909 N.W.2d 427, 429 (Iowa 2018) ("We express no opinion on the alternative grounds for summary judgment . . . .  Those issues were not briefed or argued on appeal and may be decided by the district court on remand.").  We also reject the City's suggestion that summary judgment on count two was appropriate because mandamus "is not to be used to establish rights but to enforce rights that have already been established." *Beelon v. Monroe Cnty.*, 577 N.W.2d 877, 879 (Iowa Ct. App. 1998).  Although the court didn't rule on this issue, the City did make the argument in their summary judgment motion and on appeal.  Even so, we do not believe summary judgment should be granted on that ground because the McKees are not necessarily pursuing mandamus relief to "establish rights," but instead to enforce an obligation they contend arises by operation of law, for example by prescription.  And the McKees also pursued declaratory relief in count two, which allows them to pursue a declaration of rights and legal relationships between the parties.  *See* Iowa R. Civ. P. 1.1101.

In determining whether summary judgment was appropriate, the district court considered "whether the nuisance is permanent and subject to one action or whether the nuisance is 'temporary and abatable' and thus allowing for successive actions to lie." The court found neither the extent of damage nor cause of injury had changed so the nuisance is permanent and subject to only one action, for which the limitations period has expired.

We recently explained:

> "Whether an injured party is entitled to bring successive actions for damages or must seek compensation for all injuries in one suit depends on the nature of the injury, and to some degree, the nature of the nuisance." *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 118 (Iowa 2006). "[W]here the wrongful act is continuous or repeated, so that separate and successive actions for damages arise, the statute of limitations runs as to these latter actions at the date of their accrual, not from the date of the first wrong in the series." *Hegg v. Hawkeye Tri-C[n]ty. REC*, 512 N.W.2d 558, 559 (Iowa 1994). On the other hand, when an injury is considered to be permanent, the statute of limitations begins to run at the time of the first injury. *K & W Elec.*, 712 N.W.2d at 118–19.
>
> . . . .
>
> The term "permanent" does not refer solely to the structure or object causing the nuisance. *Harvey* [*v. Mason City & Ft. Dodge Ry. Co.*], 105 N.W. [958,] 961 [(Iowa 1906)]. We must also consider "the character of the injury produced by it." *Id.* The Iowa Supreme Court has stated:
>
>> In other words, the structure or thing producing the injury may be as permanent and enduring as the hand of man can make it, yet if the resulting injury be temporary or intermittent, depending on future conditions which may or may not arise, the damages are continuing, and successive actions will lie for successive injuries.
>
> *Id.*; *see also Archer* [*v. J.S. Compton, Inc.*], 30 N.W.2d [92,] 96 [(Iowa 1947)]; *Thompson v. Ill. Cent. Ry. Co.*, 179 N.W. 191, 195 (Iowa 1920); *City of Ottumwa v. Nicholson*, 143 N.W. 439, 443 (Iowa 1913); *Hughes v. Chicago, B. & Q. Ry. Co.*, 119 N.W. 924, 926 (Iowa 1909).
>
> A nuisance may be considered to be continuing if it is temporary and subject to abatement. *See Bennett v. City of Marion*, 93 N.W. 558, 559 (Iowa 1903). In a case involving noxious and offensive odors from a hog confinement facility, the Iowa Supreme

> Court found the nuisance was permanent because there was no evidence the defendant "can or will abate the nuisance in the future" due to a lack of technology to "solve the odor problem." *Weinhold v. Wolff*, 555 N.W.2d 454, 463 (Iowa 1996). The court determined abatement of the nuisance could be accomplished only by closing the facility, a result it found neither equitable nor practical. *Id.*

*Dvorak v. Oak Grove Cattle, L.L.C.*, No. 18-1624, 2019 WL 3729469, at *2–3 (Iowa Ct. App. Aug 7, 2019) (first alteration in original), *further review denied* (Oct. 9, 2019).

Here, the City had the burden to prove damages to the McKees' property were permanent, rather than temporary, and not abatable. *Id.* at *3. The City's own director of public works opined, "Based on more recent best practices, a solution could be developed . . . ." In an engineering report, the McKees' expert proposed such a "drainage channel repair and improvement project." Although the storm water collection system as is could "be characterized as a permanent structure, its construction date is not the determinative factor"; we also look to whether injuries are recurring. *Anderson v. Yearous*, 249 N.W.2d 855, 860 (Iowa 1977). In the case before us, viewing the record in the light most favorable to the McKees, the erosion of the McKees' channel has been continuous. It could certainly be repaired and is therefore abatable and not permanent. On our review, we find the City failed to meet its burden to "show the damage to the [McKees'] property could not be cleaned up or abated." *Dvorak*, 2019 WL 3729469, at *3. So we find the grant of summary judgment on the nuisance claims on the basis that they are barred by the statute of limitations was legal error.

As to counts three and four, however, the City specifically asks us to affirm on alternative grounds not relied on by the district court. First, they repeat their

argument that any nuisance was created by the McKees' failure to maintain the easement on Lot 7. But, as we determined in relation to count two, what lies beyond Lot 7 and who is responsible for it remains a genuine issue of material fact subject to legal underpinnings the district court did not address. Even if the McKees maintained the easement on Lot 7 pristinely, the drainage from Simms Avenue through Lot 7 and onto the north property could still be a nuisance depending on the determination of who is responsible under count two. So we find summary judgment is not appropriate on this basis.

The City also argues it "is immune from the nuisance claims based on negligence." In support of this assertion, it cites Iowa Code section 670.4(1)(h). But immunity under this section 670.4(1)(h) as to claims relating to "negligent design or specification, negligent adoption of design or specification, or negligent construction or reconstruction of a public improvement" is only conferred if the improvement "was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of construction or reconstruction." True, the City's director of public works authored an affidavit stating the improvement was constructed "in conformity with the standards at the time." On the other hand, the McKees' expert opined good and standard engineering practices were not followed in constructing the public improvements. So, at the very least, genuine issues of material fact remain on the issue of immunity precluding the entry of summary judgment on this basis. As such, we reverse and remand on these counts for further proceedings.

**IV.     Conclusion**

We reverse the entry of summary judgment on counts two, three, and four and remand for further proceedings.

**REVERSED AND REMANDED.**